# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| HELEN BEAMS, Individually and as Personal Representative and Executrix of the Estate of JOHN M. BEAMS, Deceased, and on behalf of all beneficiaries of the Estate of JOHN M. BEAMS, Deceased, | § § § § § § | CIVIL ACTION NO. _____ <br> JURY REQUESTED |
| Plaintiffs, | § § § | *Pending Transfer to MDL-1699* |
| v. | § § | *(In re Bextra and Celebrex Marketing,* <br> *Sales Practices and Prods. Liab. Litig.)* |
| PFIZER, INC., ET AL., | § § § | |
| Defendants. | § | |

## UNPUBLISHED DISTRICT COURT ORDERS CITED IN NOTICE OF REMOVAL

A.   **Order,** *Hebert v. Pfizer Inc.*, No. 1:05-CV-418-HC, slip op. (E.D. Tex. Aug. 18, 2005)

B.   **Order,** *Pickens v. Pfizer Inc.*, No. 1:05-CV-528-HC, slip op. (E.D. Tex. Aug. 18, 2005)

C.   **Order,** *Knight v. Pfizer Inc.*, No. 1:05-CV-529-HC, slip op. (E.D. Tex. Aug. 17, 2005)

D.   **Order,** *Boudreaux v. Pfizer Inc.*, No. 1:05-CV-369-HC, slip op. (E.D. Tex. July 17, 2005)

E.   **Order,** *Budd v. Wyeth*, Case No. A-03-CA-465-SS, slip op. (W.D. Tex. Sept. 17, 2003)

F.   **Order,** *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. (N.D. Tex. Feb. 17, 2004)

G.   **Order,** *Northcutt v. Wyeth*, No. H-03-2665, slip op. (S.D. Tex. Aug. 13, 2003)

H.   **Order,** *Nightingale v. Wyeth*, No. W-03-CA-203, slip op. (W.D. Tex. Sept. 5, 2003)

I.   **Order,** *Ferguson v. Wyeth*, No. 4:03-CV-5141, slip op. (S.D. Tex. Jan. 30, 2004)

J.   **Order,** *Kollman v. Wyeth*, No. A-04-CA-034-SS, slip op. (W.D. Tex. Mar. 15, 2004)

K.   **Order,** *McCluskey v. Merck & Co., Inc.*, No. 07-AR-0232-S, slip op. (N.D. Ala. Mar. 7, 2007)

L.   **Order,** *Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRJ, slip op. (M.D. Fla. June 24, 2004), and **Report and Recommendation**, *Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRJ, slip op. (M.D. Fla. May 17, 2004)

M.   **Order,** *Moffett v. Wyeth*, No. DR-03-CV-069, slip op. (W.D. Tex. Dec. 17, 2003)

# EXHIBIT 7(A)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **HORACE HEBERT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:05-CV-418** |
| | § | **Judge Howell Cobb** |
| **PFIZER, INC.,** | § | |
| **NICOLE MORRIS, KELLY KROUTTER,** | § | |
| **MARCI WALLER and BOB BRIGGS,** | § | |
| | § | |
| **Defendants.** | § | |

### ORDER DENYING PLAINTIFF'S MOTION FOR REMAND

Before the court is plaintiff Horace Hebert's Motion for Remand. The court, having carefully considered the motion, is of the opinion that remand should be denied.

### DISCUSSION

Hebert filed suit in Texas state court against Pfizer, Inc. and four of Pfizer's Texas sales representatives: Nicole Morris, Kelly Kroutter, Marci Waller and Bob Briggs. Hebert alleged that Pfizer's Celebrex© prescription drug was marketed and sold to him even though Pfizer had knowledge that Celebrex© caused cardiovascular-related adverse health effects. Hebert alleges harm as a result of taking Celebrex©. Pfizer removed the case to federal court, claiming that the defendant sales representatives were improperly joined and that this court has jurisdiction under 28 U.S.C. § 1332.

**A.      *The Pfizer Sales Representatives are Improperly Joined***

To establish improper joinder, Pfizer must demonstrate that there is no reasonable basis in predicting that Hebert might establish liability on his claims against any of the in-state

1

defendant-detailers. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Under

Texas law, sales representatives have no independent duty to research and ensure the safety of

pharmaceuticals. *See, e.g., Dionne v. Wyeth*, CA No. A-03-CA-467-SS (W.D. Tex. Sept 17,

2003) ("[an] agent can only be held individually liable when he knowingly participates in

tortious or fraudulent acts"). Without an  allegation that the sales representatives made a

"knowing" misrepresentation, no claim of this sort can be successful against them. *Lewis v.

Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004); *Northcutt v. Wyeth*, No. H-

03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D.

Tex. Sept. 5, 2003); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004).

Negligence alone is not enough. *Id.*

        The plaintiff's complaint does not allege that the defendant sales representatives made

any "knowing" misrepresentations. Instead, Hebert alleges only that they were "negligent and/or

reckless in the manner in which they made these affirmative representations [about the safety of

Celebrex©] or concealed material facts from the doctors and other healthcare providers."

Allegations of negligence and recklessness are not sufficient to establish liability against a sales

representative under these conditions. Pfizer has met its burden and demonstrated that there is

no reasonable basis to predict that Hebert might be able to establish liability of the in-state sales

representative defendants. Accordingly, the court concludes that they are improperly joined.

**B.**    *Lack of Consent does not Defeat Removal*

        Hebert also claims that remand should be denied because not all of the defendants

consented to removal within the statutory period. 28 U.S.C. § 1446(a); *see Doe v. Kerwood*, 969

F.2d 165, 167 (5th Cir. 1992) ("[t]he law is clear that under 28 U.S.C. § 1446(a), removal

procedure requires that all defendants join in the removal petition"). However, consent is not required from defendants who are improperly joined. *See Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815 (5th Cir. 1993) ("[i]n cases involving alleged improper or fraudulent joinder of parties ... application of [the consent] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists"). Therefore, because the court has found that the sales representative defendants have been improperly joined, whether or not they consented to removal is immaterial.

Incidentally, the sales representative defendants who had been served in this case - Morris, Kroutter and Briggs - did, in fact, consent to removal. The only sales representative who failed to consent to removal was defendant Waller, who had not been served at the time of removal. Thus, Waller's consent would not be required even if she had been properly joined. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n. 9 (5th Cir. 1988) (28 U.S.C. § 1446(a) "has been interpreted to require that all then *served"* and *"properly joined* defendants join in the removal petition") (emphasis added). Accordingly, the plaintiff's claim that the removal of this case was procedurally defective fails.

### CONCLUSION

Based on the foregoing reasons, the court is of the opinion that the plaintiff's Motion for Remand must be denied. It is, therefore,

**ORDERED** that plaintiff Horace Hebert's Motion for Remand is **DENIED**.

SIGNED at BEAUMONT, Texas, on this the 18 day of August, 2005.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

3

# EXHIBIT 7(B)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| **DORA JEANNE PICKENS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 1:05-CV-528 |
| | § | **Judge Howell Cobb** |
| **PFIZER, INC.,** | § | |
| **NICOLE MORRIS, KELLY KROUTTER,** | § | |
| **MARCI WALLER and BOB BRIGGS,** | § | |
| | § | |
| **Defendants.** | § | |

### ORDER DENYING PLAINTIFF'S MOTION FOR REMAND

Before the court is plaintiff Dora Jeanne Picken's Motion for Remand. The court, having

carefully considered the motion, is of the opinion that remand should be denied.

### DISCUSSION

Pickens filed suit in Texas state court against Pfizer, Inc. and four of Pfizer's Texas sales

representatives: Nicole Morris, Kelly Kroutter, Marci Waller and Bob Briggs. Pickens alleged

that Pfizer's Celebrex© prescription drug was marketed and sold to her even though Pfizer had

knowledge that Celebrex© caused cardiovascular-related adverse health effects. Pickens alleges

harm as a result of taking Celebrex©. Pfizer removed the case to federal court, claiming that the

defendant sales representatives were improperly joined and that this court has jurisdiction under

28 U.S.C. § 1332.

**A.**    ***The Pfizer Sales Representatives are Improperly Joined***

To establish improper joinder, Pfizer must demonstrate that there is no reasonable basis

in predicting that Pickens might establish liability on his claims against any of the in-state

1

defendant-detailers. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Under

Texas law, sales representatives have no independent duty to research and ensure the safety of

pharmaceuticals. *See, e.g., Dionne v. Wyeth*, CA No. A-03-CA-467-SS (W.D. Tex. Sept 17,

2003) ("[an] agent can only be held individually liable when he knowingly participates in

tortious or fraudulent acts"). Without an allegation that the sales representatives made a

"knowing" misrepresentation, no claim of this sort can be successful against them. *Lewis v.*

*Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004); *Northcutt v. Wyeth*, No. H-

03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D.

Tex. Sept. 5, 2003); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004).

Negligence alone is not enough. *Id.*

The plaintiff's complaint does not allege that the defendant sales representatives made

any "knowing" misrepresentations. Instead, she alleges only that they were "negligent and/or

reckless in the manner in which they made these affirmative representations [about the safety of

Celebrex©] or concealed material facts from the doctors and other healthcare providers."

Allegations of negligence and recklessness are not sufficient to establish liability against a sales

representative under these conditions. Pfizer has met its burden and demonstrated that there is

no reasonable basis to predict that Pickens might be able to establish liability of the in-state sales

representative defendants. Accordingly, the court concludes that they are improperly joined.

**B.**     ***Lack of Consent does not Defeat Removal***

Pickens also claims that remand should be denied because not all of the defendants

consented to removal within the statutory period. 28 U.S.C. § 1446(a); *see Doe v. Kerwood*, 969

F.2d 165, 167 (5th Cir. 1992) ("[t]he law is clear that under 28 U.S.C. § 1446(a), removal

procedure requires that all defendants join in the removal petition"). However, consent is not required from defendants who are improperly joined. *See Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815 (5th Cir. 1993) ("[i]n cases involving alleged improper or fraudulent joinder of parties ... application of [the consent] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists"). Therefore, because the court has found that the sales representative defendants have been improperly joined, whether or not they consented to removal is immaterial.

Incidentally, the sales representative defendants who had been served in this case - Morris, Kroutter and Briggs - did, in fact, consent to removal. The only sales representative who failed to consent to removal was defendant Waller, who had not been served at the time of removal. Thus, Waller's consent would not be required even if she had been properly joined. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n. 9 (5th Cir. 1988) (28 U.S.C. § 1446(a) "has been interpreted to require that all then *served"* and *"properly joined* defendants join in the removal petition") (emphasis added). Accordingly, the plaintiff's claim that the removal of this case was procedurally defective fails.

<u>CONCLUSION</u>

Based on the foregoing reasons, the court is of the opinion that the plaintiff's Motion for Remand must be denied. It is, therefore,

**ORDERED** that plaintiff Dora Jeanne Picken's Motion for Remand is **DENIED**.

SIGNED at BEAUMONT, Texas, on this the 18 day of August, 2005.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

3

# EXHIBIT 7(C)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| JOHN KNIGHT | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | Case No. 1:05-CV-529 |
| | § | Judge Howell Cobb |
| PFIZER, INC., NICOLE MORRIS, | § | |
| KELLY KROUTTER, MARCI WALLER | § | |
| and BOB BRIGGS | § | |
| | § | |
| Defendants | § | |

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND**

Before the court is plaintiff John Knight's Motion for Remand [dkt. #4]. The court, having considered the motion, is of the opinion that Remand should be DENIED.

John Knight filed suit in Texas state court against Pfizer, Inc. and four of Pfizer's Texas sales representatives: Nicole Morris, Kelly Kroutter, Marci Waller and Bob Briggs. Knight alleged that Pfizer's Bextra© prescription drug was marketed and sold to her, even though Pfizer knew about that Bextra© had cardiovascular-related adverse health effects. Knight alleges harm as a result of taking Bextra©. Pfizer removed the case to federal court, claiming that its sales representatives were improperly joined.

To establish improper joinder, Pfizer must demonstrate that there is no reasonable basis for this court to predict that Knight might be able to recover against any of the in-state defendants. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). Under Texas law, sales representatives have no independent duty to research and ensure the safety of pharmaceuticals. *See, e.g., Dionne v. Wyeth*, CA No. A-03-CA-467-SS (W.D. Tex. Sept 17, 2003). Without an allegation

1

that the sales representatives made a "knowing" misrepresentation, no claim of this sort can be successful against them. *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004); *see also Northcutt v. Wyeth*, No. H-03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D. Tex. Sept. 5, 2003); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004). Negligence alone is not enough. *Id.*

Plaintiff's complaint does not allege "knowing" misrepresentations on the part of the sales representatives. It alleges only that they were "negligent and/or reckless in the manner in which they made these affirmative representations [about the safety of Bextra] or concealed material facts from the doctors and other healthcare providers." Negligence and recklessness are not enough to establish liability against a sales representative under these conditions. Accordingly, Pfizer has met its burden and demonstrated that there is no reasonable basis to predict that Knight might be able to recover against any of the in-state defendants.

Knight has also claimed that remand should be denied because defendants Waller and Krouter have not consented to removal. However, consent is not required from defendants who are improperly joined. *Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815 (5th Cir. 1993). Moreover, the record is not clear when (or even if) defendants Waller and Krouter were served. The consent of a defendant who was not yet served at the time of removal is unnecessary, even if he or she was properly joined. *Getty Oil Corp. v. Ins. Co. Of N. Am.*, 841 F.2d 1252, 1262 n. 9 (5th Cir. 1988)

It is therefore ORDERED that plaintiff John Knight's Motion for Remand is DENIED.

SIGNED at BEAUMONT, Texas, on this the 17 day of August, 2005.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

2

EXHIBIT 7(D)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| DOROTHY H. BOUDREAUX | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | Case No. 1:05-CV-369 |
| | § | Judge Howell Cobb |
| PFIZER, INC., NICOLE MORRIS, | § | |
| KELLY KROUTTER, MARCI WALLER | § | |
| and BOB BRIGGS | § | |
| | § | |
| Defendants | § | |

**ORDER DENYING PLAINTIFF'S MOTION FOR REMAND**

Before the court is plaintiff Dorothy Boudreaux's Motion for Remand [dkt. #4]. The court, having considered the motion, is of the opinion that Remand should be DENIED.

Dorothy Boudreaux filed suit in Texas state court against Pfizer, Inc. and four of Pfizer's Texas sales representatives: Nicole Morris, Kelly Kroutter, Marci Waller and Bob Briggs. Boudreaux alleged that Pfizer's Bextra© prescription drug was marketed and sold to her, even though Pfizer knew about that Bextra© had cardiovascular-related adverse health effects. Boudreaux alleges harm as a result of taking Bextra©.       Pfizer removed the case to federal court, claiming that its sales representatives were improperly joined.

To establish improper joinder, Pfizer must demonstrate that there is no reasonable basis for this court to predict that Boudreaux might be able to recover against any of the in-state defendants. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).    Under Texas law, sales representatives have no independent duty to research and ensure the safety of pharmaceuticals. *See, e.g., Dionne v. Wyeth*, CA No. A-03-CA-467-SS (W.D. Tex. Sept 17, 2003). Without an allegation

1

that the sales representatives made a "knowing" misrepresentation, no claim of this sort can be successful against them. *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004); *see also Northcutt v. Wyeth*, No. H-03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D. Tex. Sept. 5, 2003); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004). Negligence alone is not enough. *Id.*

Plaintiff's complaint does not allege "knowing" misrepresentations on the part of the sales representatives. It alleges only that they were "negligent and/or reckless in the manner in which they made these affirmative representations [about the safety of Bextra] or concealed material facts from the doctors and other healthcare providers." Negligence and recklessness are not enough to establish liability against a sales representative under these conditions. Accordingly, Pfizer has met its burden and demonstrated that there is no reasonable basis to predict that Boudreaux might be able to recover against any of the in-state defendants.

Boudreaux has also claimed that remand should be denied because defendant Waller had not consented to removal. However, consent is not required from defendants who are improperly joined. *Jernigan v. Ashland Oil, Inc.* 989 F.2d 812, 815 (5th Cir. 1993). Moreover, because Waller had not yet been served at the time of removal, her consent would not be required even if she had been properly joined. *Getty Oil Corp. v. Ins. Co. Of N. Am.*, 841 F.2d 1252, 1262 n. 9 (5th Cir. 1988)

It is therefore ORDERED that plaintiff Dorothy Boudreaux's Motion for Remand is DENIED.

SIGNED at BEAUMONT, Texas, on this the 15 day of July, 2005.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

2

# EXHIBIT 7(E)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION
2003 SEP 17 AM 9: 46
WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE
BY: _____
DEPUTY

**KATHY BUDD,**

**Plaintiff,**

-vs-                                                 Case No. A-03-CA-465-SS

**WYETH INC. f/k/a American Home Products
Corporation; A.H. ROBINS COMPANY,
INCORPORATED; WYETH-AYERST
LABORATORIES DIVISION; WYETH-AYERST
PHARMACEUTICALS, INC.; AMERICAN
CYANAMID CORPORATION; APRIL
WOMACK; DOUGLAS THOME; and ANN
FULCHER,**

**Defendants.**

## O R D E R

BE IT REMEMBERED on the 25th day of August 2003, the Court called thee above-styled

cause for a hearing on Plaintiff's Motion to Remand [#7]. Before the Court are the Plaintiff's

Motion to Remand, Defendants' response thereto [#8], and Defendants' [#10, #15, #16] and

Plaintiff's [#13] supplements. After the hearing, Defendants filed an Unopposed Motion to Continue

All Deadlines Under Federal Rule of Civil Procedure 26 and Local Rule CV-16 [#14]. Having

considered the motions, responses, arguments of counsel at the hearing and in their post-hearing

submissions, the relevant law and the case file as a whole, the Court now enters the following

opinion and orders.

### Factual and Procedural Background

This case involves the Plaintiff's alleged use of the diet drugs fenfluramine and

dexfenfluramine ("fen-phen"). The Plaintiff, Kathy Budd, who resides in Travis County, Texas,

opted out of a national class action settlement of fen-phen claims and filed this individual lawsuit. *See* Notice of Removal at 2 and Ex. 2 ("Pet.") at ¶ 2. She sues several Wyeth-Ayerst entities, including its Wyeth Pharmaceuticals Division, Wyeth Pharmaceuticals, Inc., and Wyeth Holdings Corporation (collectively, "Wyeth"). Pet. ¶¶ 3-8. Wyeth is a Delaware corporation with its principal place of business in New Jersey that allegedly promoted, marketed, manufactured and distributed fen-phen. *Id.*; Notice of Removal at 3. Budd asserts claims for strict products liability, breach of express and implied warranty, and negligent misrepresentation against Wyeth. Pet. ¶¶ 24-42. She also sues three Wyeth pharmaceutical sales representatives – April Womack, Douglas Thome, and Anne Fulcher – all Texas residents, for alleged misrepresentations they made in their capacities as Wyeth sales representatives. Pet. ¶¶ 9-11. Budd, who sues all of the defendants jointly and severally, seeks damages for past and future medical expenses, lost wages, pain and suffering, mental anguish, and the physical impairment and disfigurement that she claims she suffered as a proximate result of the Defendants' wrongdoings and actions. Pet. at 14-15.

Budd filed her petition in the 98th Judicial District Court of Travis County, Texas on May 29, 2003. On July 9, 2003, Wyeth removed the case to this Court on the basis of diversity jurisdiction, alleging the Plaintiff had fraudulently joined Womack, Thome and Fulcher as defendants in the case. According to the state court docket, citation had issued to all of the Defendants at the time of removal. On July 31, 2003, Budd filed a motion to remand.

**Analysis**

Wyeth removed the case to federal court on the basis of diversity jurisdiction. For this Court to have diversity jurisdiction over a case, the defendant must prove there is complete diversity among the parties in the case – in other words, the plaintiff is diverse from every defendant. *See* 28 U.S.C.

-2-

§ 1332; *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806). Thus, the primary issue before this Court is whether Womack, Thome and Fulcher are proper defendants in this case and, consequently, whether this Court has subject matter jurisdiction over the case under 28 U.S.C. § 1332.

Wyeth alleges the sales representatives, Womack, Thome and Fulcher, were fraudulently joined as defendants, in which case the Court would ignore their Texas citizenship for jurisdictional purposes. To establish the sales representatives, referred to by the parties as "detailers," were fraudulently joined, Wyeth must satisfy the heavy burden of showing there is no possibility Budd could establish a cause of action against Womack, Thome or Fulcher, or that Budd committed outright fraud in her recitation of the jurisdictional facts. *See Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). In evaluating a defendant's assertion of fraudulent joinder, a court must consider all of the factual allegations in the light most favorable to the plaintiff and resolve all of the contested issues of fact in favor of the plaintiff. *Burden,* 60 F .3d at 217.

However, a court may pierce the pleadings to determine fraudulent joinder and, even though the petition may state a claim against the in-state defendant, the case may be removed if the removing defendant demonstrates through summary judgment-type evidence outside the pleadings there is no reasonable basis to predict the plaintiff could establish a claim against the in-state defendant. *Badon v. R J R Nabisco, Inc.,* 224 F.3d 382, 389, 394 (5th Cir. 2000) (*"Badon I"* ), *op. after certified question declined,* 236 F.3d 282 (5th Cir. 2000) (*"Badon II"* ) (holding no controversy exists to construe in favor of nonremoving party when it submits no evidence of contradictory facts in response to the evidence of the removing party); *see also B., Inc.,* 663 F.2d at 549 (affirming the

-3-

appropriateness of considering deposition and affidavit evidence). Nevertheless, a court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. *B., Inc.,* 663 F.2d at 549. Thus, Wyeth must show, as a matter of law, "there is no reasonable basis for predicting that [Swinheart] might establish liability on [her] claim against [the detailers] ." *Badon I,* 224 F.3d at 390; *see also Burden,* 60 F.3d at 216 (explaining district courts "do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so.").

Wyeth contends there is no reasonable possibility Budd could succeed in her misrepresentation claims against any of the three detailer defendants because she has not pled a valid cause of action against Womack, Thome or Fulcher. Wyeth also contends the allegations Budd has made against each detailer, even if they did constitute a valid cause of action, are refuted by the evidence Wyeth has submitted.

In this case, Wyeth and Budd each urge a different interpretation of Texas substantiative law that would in turn lead this Court to opposite conclusions as to whether Budd could conceivably prevail on its misrepresentation claims against Womack, Thome or Fulcher. Budd contends that because an agent or employee can be held independently liable for his own torts, she can sue the detailers in state court for the injuries she sustains as a result of the detailers' personal misrepresentations. On the other hand, Wyeth claims the detailers do not owe a duty of care to Budd separate and apart from the duty of care Wyeth owes Budd, and therefore, Budd has failed to assert a legally cognizable misrepresentation claim against the detailers.

Budd relies on *Kingston v. Helm,* 82 S.W.3d 755 (Tex. App. – Corpus Christi, 2002, pet. denied), to support her argument Womack, Thome and Fulcher can be held individually liable under

Texas law for their misrepresentations. In *Kingston*, the state appellate court discussed at length several decisions of the Texas Supreme Court regarding the individual liability of agents and employees of corporations. The Corpus Christi court noted the general rule is "a corporate officer's acts on the corporation's behalf are deemed to be acts of the corporation," but an exception exists, and a "'corporation's employee is personally liable for tortious acts which he directs or participates in during his employment.'" *Id.* at 758 (citing *Leitch v. Hornsby*, 935 S.W.2d 114, 117-18 (Tex. 1996) and quoting *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984)). According to the *Kingston* court, "the law [in Texas] is well-settled that a corporate agent can be held liable for fraudulent statements and knowing misrepresentations even when they are made in the capacity of a representative of the corporation." *Id.* at 759. The court clarified, however, that the agent can only be held individually liable when he *knowingly* participates in tortious or fraudulent acts. *Id.* (emphasis this Court's own). The appellate court ultimately concluded that an officer of a real estate company who made false representations to the plaintiff with regard to a townhouse the plaintiff purchased could be held individually liable under the Texas Deceptive Trade Practices Act for those knowing misrepresentation. *Id.* at 757, 761.

In this case, although Budd does not allege specific actions on the part of each detailer in the context of stating her causes of action, she make the following general allegation against all of the defendants:

> All defendants individually and through their agents, representatives and/or employees, belligerently misrepresented or omitted to state material facts about the dangers of the subject products containing PPA in that they made such misrepresentation ro omissions when they knew or should have known of the falsity of such representations. Alternatively, all defendants made such omissions or representations without exercising reasonable care to ascertain the accuracy of these representations.

Pet. ¶ 41.  In the "Parties" section of the petition, Budd alleged that each detailer, in his or her

position as a Wyeth sales representative, promoted fen-phen by providing information to Texas

physicians, and while doing so, "affirmatively undertook to provide misleading information relating

to the safety of fen/phen, which the Defendant knew or should have known were false." Pet. ¶¶ 9-11.

Budd further alleged each detailer "made such representations with the intent or purpose that the

Plaintiff and others would rely upon them leading to the ingestion and use of said drugs by the

Plaintiff causing the Plaintiff to suffer severe and permanent heart valve damage." Id.

Essentially, Budd alleges the detailers passed information supplied by Wyeth to the

physicians and they knew or should have known this information contained misstatements about the

safety of the diet drug.  This does not constitute an allegation of *knowing* participation in a

misrepresentation on the part of a corporate agent (the detailer).  If Budd had alleged the sales

representatives made up additional misleading information and told it to the doctors to induce them

to prescribe the drugs, the way a realtor might misrepresent the conditions of a piece of property to

make the sale, or if she had alleged the detailers were told of the dangers of fen-phen but

intentionally did not disclose them to the doctors, then she might have stated a claim with a

reasonable chance of success under the exception articulated in *Kingston*.  Instead, the general rule

applies and because the detailers do not have duty to research and ensure the safety fen-phen separate

from Wyeth's duty, Budd does not have a reasonable probability of success on her misrepresentation

claims against the detailers under Texas law.  *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex.

1996) (holding agents can only be held individually liable when they owe an independent duty of

reasonable care to the injured party separate and apart from their employer's duty); *Firestone Steel*

*Products Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (holding only those who design,

manufacture or sell a product have a duty to warn); *see also* Def.'s Supp. to Resp. (collecting several orders written by Judges Lee Rosenthal and Lynn Hughes of the Southern District of Texas dismissing claims against pharmaceutical sales representatives on the grounds there is no reasonable basis to recover against them under Texas law).

Moreover, even if Budd did have a reasonable chance of prevailing on her claims against the detailers individually, Wyeth has disproved the factual allegations that serve as the basis of her misrepresentation claims with uncontroverted summary judgment type evidence in the form of the detailers' sworn declarations. *See* Notice of Removal, Ex. Z1 ("Womack Decl."), Ex. Z2 ("Thome Decl."), & Ex. Z3 ("Fulcher Decl."). In their declarations, the detailers refute that they ever intentionally misrepresented the safety or efficacy of fen-phen and explained it was their job to pass on the FDA-approved information provided to them by Wyeth. *See* Womack Decl. ¶¶ 2, 4; Thome Decl. ¶¶ 2, 4, 9; Fulcher Decl. ¶¶ 2, 4, 9. Additionally, Womack never even detailed fen-phen. *See* Womack Decl. ¶ 3. And Thome and Fulcher swear they did not know of the alleged correlation between the use of the drug and heart valve damage until the allegation was first publicized. *See* Thome Decl. ¶ 6; Fulcher Decl. ¶ 6.

If Budd had produced any contradictory evidence, even if it was less credible than Wyeth's, it would have created a fact issue which the court would have had to resolve in her favor. However, on a motion to remand, the Court must only resolve fact disputes in a plaintiff's favor when "when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon I,* 224 F.3d at 394 (emphasis in original). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support its claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075

(5th Cir.1994)). Because in this case, Wyeth has negated the facts which might form the basis of a

state law claim, the Court holds the detailers were fraudulently joined. The "mere theoretical

possibility of recovery under local law" does not preclude removal. *Badon II*, 236 F.3d at 286; *Ross*

*v. Citifinancial, Inc.*, ___ F.3d ___, 2003 WL 22026346, at *3 (5th Cir. Aug. 29, 2003).


In accordance with the foregoing:

IT IS ORDERED that Plaintiff's Motion to Remand [#7] is DENIED;

IT IS FURTHER ORDERED that Defendants' Unopposed Motion to Continue All

Deadlines Under Federal Rule of Civil Procedure 26 and Local Rule CV-16 [#14] is

DISMISSED as moot in light of this order.


SIGNED this the ___ day of September 2003.


SAM SPARKS
UNITED STATES DISTRICT JUDGE

# EXHIBIT 7(F)

02/17/2004  14:16 FAX  806 472 7639        US DISTRICT COURT        → ABILENE        ☑ 002/012

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION



THERESA LEWIS,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )
                                        )
WYETH, et al.,                          )
                                        )   Civil Action No.
            Defendants.                 )   1:03-CV-166-C

## ORDER

On this date the Court considered Theresa Lewis's ("Plaintiff") Motion for Remand,

filed September 29, 2003.  The Court further considered Defendant Wyeth, Inc. and Wyeth

Pharmaceuticals' (collectively "Wyeth") Notice of Removal, filed August 29, 2003, and

Wyeth's Response in Opposition to Plaintiff's Motion for Remand, filed October 20, 2003.

After considering all the relevant arguments and evidence, Plaintiff's Motion for Remand is

**DENIED** for the following reasons:

## I.
## BACKGROUND

This lawsuit was originally filed in the 118th District Court of Texas, in Howard

County, on June 2, 2003.  Plaintiff's cause of action arises from injuries allegedly suffered as

a result of her having taken the Wyeth prescription drugs Dexfenfluramine (Redux) and/or

Fenfluramine (Pondimin), in combination with a non-Wyeth drug, Phentermine, a

combination commonly referred to as "phen/fen."  Plaintiff opted out of a national class

action settlement of phen/fen claims and filed this individual suit against Wyeth, the manufacturer of the drugs involved, as well as against two of Wyeth's detail (i.e., sales) representatives, George W. Williford and Randy W. Peets (collectively, "the sales representatives"). On August 29, 2003, Wyeth removed this action, on the basis of diversity jurisdiction, to the United States District Court for the Northern District of Texas, Abilene Division. Wyeth is a Delaware corporation with its principal place of business in New Jersey. Wyeth alleges that removal was proper because the sales representatives, both of whom are Texas citizens, were fraudulently joined, in which case the Court should disregard their non-diverse citizenship for the purpose of establishing diversity jurisdiction. On August 29, 2003, Wyeth also filed a Motion to Stay All Proceedings Pending Transfer to MDL-1203, which the Court denied on September 4, 2003.

Plaintiff filed a Motion to Remand on September 29, 2003. Wyeth filed its Response in Opposition to Plaintiff's Motion for Remand on October 20, 2003.

## II.
## STANDARD

Once a case has been removed, the removing party bears the burden of proving that jurisdiction exists. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted). Removal statutes are to be strictly construed and any uncertainty regarding jurisdiction is to be resolved in favor of remand. *Brown v. Demco*, 792 F.2d 478, 482 (5th Cir. 1986). If the removing party alleges jurisdiction on the basis that non-diverse parties have been fraudulently joined, then the removing party must prove the existence of fraud. *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 101 (5th Cir.), *cert. denied*, 498

U.S. 817, 111 S. Ct. 60, 112 L.Ed.2d 35 (1990). To prove its allegation of fraud, the removing defendant "must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). The Fifth Circuit has more recently held that "no possibility" means no *"reasonable* basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000) *(Badon II)* (italics in original); *see also, Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) ("If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This possibility, however, must be reasonable, not merely theoretical.") (italics omitted; citation omitted).

In determining whether the joinder of parties is fraudulent, the district court must evaluate all unchallenged factual allegations, including those in the complaint, in the light most favorable to the plaintiff, resolving all contested issues of substantive fact and ambiguities in state law in favor of the plaintiff. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699-702 (5th Cir. 1999). Thus, the appropriate method for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure. *Keating v. Shell Chem. Co.*, 610 F.2d 328, 333 (5th Cir. 1980). In resolving a removing party's claim of fraudulent joinder, "[a] court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a

-3-

valid claim against the non-diverse parties." *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992); *see also Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) ("[A] district court may look to evidence outside of the pleadings in determining a fraudulent joinder claim"); *Carriere*, 893 F.2d at 100 (trial court properly considered affidavits and depositions).

In order to find that joinder is fraudulent, the court must assume that all of the facts set forth by the plaintiff are true and that there is no possibility of a valid cause of action being set forth against the in-state defendant. *B., Inc.*, 663 F.2d at 551, 554; *Tedder*, 590 F.2d at 117. However, the court must not "pre-try" substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent. *B., Inc.*, 663 F.2d at 546. The court must not decide whether the plaintiff will actually or even probably prevail on the merits but must look only for a reasonable possibility that plaintiff may do so. *Dodson*, 951 F.2d at 42; *Travis*, 326 F.3d at 648. If the possibility exists that a plaintiff may prevail, then "a good faith assertion of such an expectancy in a state court is not a sham . . . and is not fraudulent in fact or in law." *B., Inc.*, 663 F.2d at 550 (internal quotations and citations omitted). Nevertheless, on a motion to remand, the court need only resolve factual issues in movant's favor "when there exists an actual controversy, i.e., when *both* parties have sumitted *evidence* of contradictory facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (*Badon I*) (emphasis in original). In the end, if no possible claims exist against the non-diverse defendant, its presence must be disregarded for jurisdictional purposes. *Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116-17 (5th Cir. 1979).

# III.
## DISCUSSION

The basis for Wyeth's argument that removal is proper is its contention that the non-diverse sales representative defendants have been fraudulently joined, thus allowing the Court to ignore their citizenship for the purpose of establishing diversity jurisdiction. There being no instance of outright fraud in Plaintiff's pleadings of jurisdictional facts, Wyeth bears the burden of showing there is no reasonable possibility Plaintiff will be able to establish her cause of action against the sales representatives in Texas state court. Plaintiff asserts claims of negligent and fraudulent misrepresentation against the sales representatives, alleging that they told doctors, including Plaintiff's prescribing physician, that Pondimin and Redux were safe and effective for weight loss.

Wyeth contends that joinder is fraudulent as to the sales representatives, arguing that there is no possibility that the Plaintiff would be able to establish a valid cause of action against the sales representatives in Texas state court. In particular, Wyeth maintains that the negligence claim fails because, under Texas law, employees have no personal liability for a breach of an employer's duty unless they owe "an independent duty of reasonable care to the injured party apart from the employer's duty." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). Further, Wyeth argues a defendant has no duty of care to an injured party where he neither designed, manufactured, nor sold the product that caused the injury, and thus he cannot be held liable under a negligence theory. *See Firestone Steel Prods v. Barajas*, 927 S.W.2d 608, 615 (Tex. 1996). Plaintiff argues that *Leitch*, which held that a corporate officer acting on the corporation's behalf does not owe an independent duty to a corporate employee

-5-

to provide that employee with a safe workplace, *see Leitch*, 935 S.W. 2d at 117, is

distinguishable and its holding should not be extended to the facts of this case, as any

ambiguities in state law should be resolved in Plaintiff's favor. Plaintiff contends that she

has alleged and will establish a causal link between herself and the sales representatives.

    Nevertheless, Plaintiff fails to provide this Court with any case law that indicates to

this Court that the sales representatives would have had an independent duty of care to her for

any negligent misrepresentations they may have made.[1] Rather, this Court takes note of a

Texas appellate court's analysis of Texas law on the subject that provided a comprehensive

discussion of several Texas Supreme Court decisions on a corporate agent's or employee's

individual liability. *See Kingston v. Helm*, 82 S.W.3d 755 (Tex. App.–Corpus Christi 2002,

pet. denied). The court in *Kingston* noted that the supreme court's decision in *Leitch* that

required "a separate, independent duty in order to impose personal liability on a corporate

officer or agent" for his or her own tortious conduct made an important distinction in its

recognition that "[c]auses of action rooted in negligent conduct are not analogous to causes of

action rooted in fraud and misrepresentation." *Id.* at 762. The settled law in Texas regarding

misrepresentation is that "a corporate agent can be held liable for fraudulent statements and

---

[1] The only Texas case Plaintiff cites for her proposition that a corporate agent has a duty of care independent of that of the corporation for negligent acts is *Leitch*, for its recognition that "an agent whose negligence causes an auto accident may be held individually liable along with his or her employer when driving in the course and scope of employment." *Leitch*, 935 S.W.2d at 117. As the court in *Kingston v. Helm* noted, however, the "independent duty" that gives rise to a corporate agent's liability for his own negligent conduct in such an instance is the particular "duty of reasonable care to the general public to operate an automobile in a non-negligent manner." *Kingston v. Helm*, 82 S.W.3d 755, 762 (Tex. App.–Corpus Christi 2002, pet. denied) (internal quotations omitted; citation omitted).

02/17/2004 14:16 FAX  806 472 7639    US DISTRICT COURT    → ABILENE    ☒ 008/012

knowing misrepresentations even when they are made in the capacity of a representative of the corporation," but that the corporate agent must "knowingly participate[]" in the misrepresentation. *Id.* at 759. Accordingly, this Court concludes that under Texas law, Plaintiff has no reasonable possibility of success on any claims for negligence on the part of the sales representatives. There is no ambiguity in state law to resolve in her favor.

As to Plaintiff's claims for fraud and for misrepresentation where the sales representatives knowingly or intentionally participated, because Texas law clearly allows for such a claim by Plaintiff, and because the Court must assume that the factual allegations underlying these claims are true, Wyeth can only meet its burden to show that Plaintiff has no reasonable possibility of success on these claims by providing this Court with undisputed summary judgment type evidence that disproves the factual allegations underlying these claims. Merely pointing to Plaintiff's lack of evidence is not sufficient to meet Wyeth's burden. *See Travis*, 326 F.3d at 650-51. Wyeth has presented sworn affidavits from the sales representatives in which they specifically deny the factual allegations that underlie Plaintiff's claims of fraud and knowing or intentional misrepresentation. [Wyeth's Notice of Removal, Ex. Z1 (Williford Declaration), Z2 (Peets Declaration)].

Although Plaintiff has pleaded factual allegations of a "causal link between herself and the [sales] [r]epresentatives" [Pl.'s Motion for Remand at 5], Plaintiff has presented no summary judgment type evidence to support those allegations and to dispute Wyeth's evidence. Evidence Plaintiff has submitted to show that the sales representatives met with Plaintiff's prescribing physician to promote the drugs [Affidavit of Stuart Kusin, Pl.'s Motion

02/17/2004 14.17 FAX  806 472 7639          US DISTRICT COURT          → ABILENE          ☑ 009/012

for Remand, Ex. A at ¶ 5], or that other sales representatives made statements to other physicians regarding the drugs [*Id.* at ¶ 6], is not competent summary judgment evidence in support of Plaintiff's allegations.[2]  Absent some evidence of contradictory facts, there is nothing to resolve in Plaintiff's favor.  *See Badon I*, 224 F.3d at 394.  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support its claims for fraud and knowing or intentional misrepresentation against the non-diverse sales representatives.  *See id.*  A "mere theoretical possibility of recovery under [state] law" does not preclude removal.  *Badon II*, 236 F.3d at 286; *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003) (same).  Although Plaintiff does not bear the burden of showing that removal is proper, where removing defendant Wyeth has produced evidence in the form of affidavits to negate the claims Plaintiff might have under Texas law, the Plaintiff must produce some evidence as proof of the necessary facts to support her claims.  Absent any such evidence, Defendant has met its burden to establish that Plaintiff has no reasonable possibility of success on her claims against the sales representatives as those claims have been pleaded at the time of removal.  Therefore, the Court holds that the sales representatives were fraudulently joined and removal is proper.

---

[2]Plaintiff also argues that redacted portions of Wyeth's notes regarding visits of sales representatives to physicians to promote the drugs should be presumptive evidence of facts unfavorable to Wyeth. [Pl.'s Motion for Remand at 14-15].  However, other courts have examined these redacted portions and concluded that they refer to drugs other than those at issue in the case *sub judice*, and Plaintiff has failed to convince this Court to indulge her desired presumption herein.

## IV.
## CONCLUSION

After considering all the relevant arguments and evidence, and for the foregoing reasons, the Court concludes that there is no reasonable possibility that Plaintiff has stated a claim cognizable in Texas state court against the sales representatives. Wyeth, therefore, has met its burden of proving fraudulent joinder as to the sales representatives, and this Court must ignore their citizenship for the purpose of determining diversity jurisdiction. There being complete diversity between Plaintiff and Wyeth, removal is proper. Plaintiff's Motion for Remand is **DENIED**.

SO ORDERED this _17th_ day of February, 2004.

SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE

-9-

EXHIBIT 7(G)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

AUG 1 3 2003

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| TOM NORTHCUTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 03-2665 |
| | § | |
| | § | |
| WYETH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Tom Northcutt filed suit in May 2003 seeking damages in state court against a number of defendants, most from outside Texas. Northcutt alleges that in 1996, he was prescribed diet drugs containing Phentermine and Fenfluramine, a combination commonly known as fen/phen, for obesity. Fen/phen was withdrawn from the market in September 1997. In August 2000, the court presiding over MDL No. 1203, *In re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, approved a nationwide class settlement. Under that settlement, certain categories of plaintiff may exercise an "intermediate opt-out right." Northcutt identifies himself as such a plaintiff.

In this suit, Northcutt alleged that he has been diagnosed as    FDA

positive, as that term is defined by MDL No. 1203. Northcutt named a number of drug manufacturers, all diverse to plaintiff's citizenship, as defendants. He also sued his prescribing doctor, John Levins, and four sales representative or sales manager employees of Wyeth, L. Clayton Lacy, Frank Bedrick, Robert Falke, and Linda Lorch. These defendants are all Texas citizens. Wyeth removed and moved to stay pending transfer to the MDL court. Northcutt has moved to remand, asserting a lack of diversity and a failure of all defendants to consent to removal. Wyeth has responded, asserting that there is no reasonable basis for Northcutt to recover against the individual defendants under Texas law and that the unanimity requirement has not been violated.

## I.    The Removal Standard

To decide whether a defendant has been fraudulently joined, the district court can employ a summary judgment-like procedure that allows it to pierce the pleadings and examine affidavits and deposition testimony for evidence of fraud or the possibility that the plaintiff can state a claim under state law against a nondiverse defendant. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 n.9 (5th Cir. Unit A Dec.1981). "After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has any possibility of recovery against the party whose joinder is

questioned." *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990). "If there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved,' then there is no fraudulent joinder." *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2001) (quoting *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993)). This possibility, however, must be reasonable, not merely theoretical. *See id.* at 286 n.4. The issue is whether there is a real, not theoretical, possibility of recovery under state law against the resident defendant. *Travis v. Irby*, 2003 WL 1614211 (5th Cir. 2003); *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999).

## II.    Analysis

This court finds that the record establishes no reasonable possibility for Northcutt to recover against Levins. Northcutt asserts that Levins prescribed the diet drugs to Northcutt between June 1996 and April 1997. Northcutt filed suit in May 2003. A number of courts have examined very similar claims against individual doctors who prescribed fen/phen diet drugs before they were withdrawn from the market, brought long after the limitations period. In the great majority of these cases, collected by defendant as exhibits to the response to the motion to remand, the courts have held that limitations applies as a matter of law. These courts have emphasized the absence of a latency period and the extensive publicity surrounding the fen/phen

diet drugs as giving the individual consumer ample and relatively easy opportunity to discover any injury.

Northcutt's assertion of the open courts doctrine as a basis for circumventing limitations is without legal basis. The open courts exception applies "only if it would be impossible or exceedingly difficult to discover the injury" within limitations. *Rubalcaba v. Kaestner, 981 S.W.2d 369, 373* (Tex. App.– Houston [1st Dist.] 1998, pet. denied); *O'Reilly v. Wiseman*, 2003 WL 1922492 at *7 (Tex. App.– Austin, April 24, 2003, pet. filed). There is no reasonable possibility that Northcutt could meet this standard because, as a matter of law, he easily could have discovered the injury she alleges within the limitations period. Levins's in-state citizenship is irrelevant to determining diversity jurisdiction. The claims against Levins are dismissed.

Northcutt also asserted claims against Lacy, Bedrick, Falke, and Lorch, sales representatives for Wyeth. Northcutt alleged no specific facts as to their activities in the petitions filed in the state court. In the motion to remand, Northcutt attaches certain documents relating to certain activities Lacy and Bedrick performed as Wyeth sales managers involved with promoting Redux. Assuming that such documents are properly considered, there is nonetheless no reasonable possibility that Northcutt will recover a judgment against Lacy and Bedrick or the other two sales

representatives individually on the causes of action he has alleged. Other courts examining similar allegations and evidence against individual employees of the pharmaceutical manufacturers have concluded that the joinder of such employees is fraudulent because the record as to their responsibilities precludes recovery under state tort law. Those cases are collected in the defendant's response to the motion to remand. In the present case, the individual employees have filed affidavits describing their job duties involving Redux or Pondimin. The additional documents Northcutt attached to his motion to remand did not provide any indication that Lacy or Bedrick had any involvement with Levins or with Northcutt. There is no allegation nor presentation of any facts that would create an independent duty owing from these individual employees to Northcutt, apart from the duty owing by Wyeth, that was violated. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). As a matter of law, there is no reasonable basis for Northcutt to recover against the individual sales representative defendants under Texas law. The claims against them are dismissed.

The final issue on remand is the issue of the absence of consent to removal by other defendants. The record is unclear as to whether all or any of the other defendants had been served at the time of the removal. Wyeth excuses its failure to secure consents by other named defendants on the basis that they have been fraudulently joined.

The issue of whether Northcutt has fraudulently named the phentermine manufacturer defendants in order to frustrate the intent to remove is one peculiarly within the expertise and experience of the MDL court. Wyeth asserts a nationwide strategy by counsel for plaintiffs in diet drug cases to name phentermine manufacturer defendants with no intent of prosecuting the claims, in order to thwart Wyeth's ability to remove. Wyeth also asserts a recognition that there is no scientific basis for recovering against such defendants. These issues are likely to be common to many other diet drug cases. Judicial economy and consistency of result dictate that these key issues not be relitigated countless times. *See* 28 U.S.C.A. § 1407(a). Judicial economy is served by a stay in this court pending transfer to the MDL court if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the MDL transferee court. *In re Ivy*, 901 F.2d at 9. The transferee judge certainly has the power to determine the question of remand, and if, as seems likely, the remaining remand issues are common to many of the diet drug cases, decision by the transferee judge would avoid duplicative discovery and conflicting pretrial rulings.

The MDL Panel clearly has the authority to transfer this case despite a jurisdictional objection. *See, e.g., In re Ivy*, 901 F.2d 7, 8-10 (2d Cir. 1990) ("Once transferred, the jurisdictional objections can be heard and resolved by a single court

and reviewed at the appellate level in due course."); *Gonzalez v. American Home Products Corp.*, 223 F. Supp.2d 803 (S.D. Tex. 2002); *In re Federal Election Campaign Act Litigation,* 511 F. Supp. 821, 823-24 (J.P.M.L. 1979) (panel transferred actions despite pendency of motions to dismiss for lack of subject matter jurisdiction). The benefits of transferring such cases "to the MDL–the body established by Congress specifically to ameliorate the duplicative litigation and the valuable waste of judicial resources–are obvious." *Johnson v. AMR Corp.*, 1996 WL 164415 (N.D. Ill. 1996).

The decision whether to stay proceedings is discretionary and the exercise of discretion is guided by the policies of justice and efficiency. This court concludes that the remaining issue of defective removal involved in the motion to remand is peculiarly within the experience and expertise of the MDL judge and is likely to be raised in other transferred cases. A stay of the proceedings in this court furthers the policies of efficiency and consistency of pretrial rulings.

The motion to remand based on defective removal is denied without prejudice. The claims against John Levins, M.D., L. Clayton Lacy, Frank Bedrick, Robert Falke, and Linda Lorch are dismissed, with prejudice. The motion for stay of proceedings is granted, to await the ruling of the MDL Panel. This case is administratively closed, subject to reopening if it is not transferred by the MDL Panel

or when it is returned to this court.

SIGNED on August 12, 2003, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

EXHIBIT 7(H)



FILED

**IN THE UNITED STATES DISTRICT COURT**

SEP 0 5 2003

**FOR THE WESTERN DISTRICT OF TEXAS**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

**WACO DIVISION**

BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| ANDREA NIGHTINGALE, BILLIE STANSBERRY, and JAQUITA ERCK, Plaintiffs, | § § § § | |
| v. | § § | CIVIL ACTION NO. W-03-CA-203 |
| WYETH, INC., WYETH PHARMACEUTICALS, BUBBER J. COLLINS, and PAUL M. SMITH, JR., Defendants. | § § § § § | |

## O R D E R

This removal action arises out of the nationwide products liability claims against the manufacturer of the weight-loss drugs known as "fen-phen." Plaintiffs assert that they have suffered physical harm as a result of their use of the weight-loss drugs Fenfluramine and Dexfenfluramine ("fen-phen"). Plaintiffs sue not only the drug manufacturer, but two pharmaceutical representatives who promoted the drugs to Plaintiffs' physicians. Defendant Wyeth based its removal of the case on diversity of citizenship, asserting that the individual pharmaceutical representatives had been fraudulently joined. Plaintiff now moves to remand the case because of the lack of diversity. Having reviewed the motions, the pleadings, and the proof presented, the Court is persuaded that remand should be denied.

The question of whether joinder is fraudulent arises in connection with the requirement of 28 U.S.C. § 1441(b) that there be diversity of citizenship among the parties to the action who are "properly joined." The burden of proving fraudulent joinder is a heavy one. Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983). The removing party most prove: (1) "that there has been outright fraud in the

*13*

plaintiff's pleadings of jurisdictional facts;" or (2) that there is no possibility that the plaintiff will be able to establish a valid state cause of action against the non-diverse defendant. Id. This does not mean that a theoretical possibility of recovery, "no matter how remote or fanciful," will suffice to defeat removal. Badon v. RJR Nabisco, Inc., 236 F.3d 282, 286, n. 4 (5th Cir. 2000). "[T]here must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." Id. (emphasis in original). "While the burden of demonstrating fraudulent joinder is a heavy one, we have never held that a particular plaintiff might possibly establish liability by the mere hypothetical possibility that such an action could exist." Griggs v. State Farm Lloyds, 181 F.3d 694, 701 (5th Cir. 1999). In making such a determination, the Court must "resolve any questions of material fact, and any ambiguity or uncertainty in the controlling state law, in [Plaintiffs'] favor." Id., 181 F.3d at 699. There is no allegation or inference of outright fraud in this case. Defendant merely asserts that Plaintiff has no viable cause of action against Defendants Collins and Smith.

In determining whether there has been fraudulent joinder, the Court may rely upon matters outside of the pleadings, such as affidavits, deposition transcripts, or any other form of summary judgment-type proof permitted by Rule 56(c) of the Federal Rules of Civil Procedure. Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir.), cert. denied, 498 U.S. 817 (1990). See also Griggs v. State Farm Lloyds, 181 F.3d at 700. The Court may not, however, rely upon post-removal filings "when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." Griggs v. State Farm Lloyds, 181 F.3d at 700.

The proof presented by Defendant persuades the Court that Plaintiff has no valid cause of action against Defendants Bubber J. Collins and Paul M. Smith, Jr. Plaintiffs have identified no duty under Texas law which either Defendant owed to the Plaintiffs or violated. Additionally, Plaintiff has failed to present anything to refute the Defendants' sworn testimony that no representations were made to physicians regarding the uses and/or property of the diet drugs. The paucity of proof persuades the Court that these two Defendants were added merely as a ploy to avoid federal jurisdiction. Accordingly, it is

ORDERED that Plaintiffs' Motion to Remand is **DENIED**. It is further

ORDERED that Defendant's Motion to Stay All Proceedings Pending Transfer to MDL-1203 is **GRANTED** except that the Court will entertain a Motion for Summary Judgment filed by Defendants Bubber Collins and Paul Smith. All other proceedings in this case are **STAYED** pending resolution of proceedings in the MDL Court. It is further

ORDERED that the parties shall file written status reports with the Court every 45 days until this case is finally resolved. It is further

ORDERED that any additional pending motions are **DENIED** as moot.

SIGNED this _5_ day of September, 2003.


WALTER S. SMITH, JR.
**Chief United States District Judge**

3

# EXHIBIT 7(I)



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
ENTERED

JAN 3 0 2004

Michael N. Milby, Clerk of Court

JANICE FERGUSON, ET AL,
    PLAINTIFFS

V

WYETH, ET AL,
    DEFENDANTS

§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. H-03-5141

---

## ORDER

    Before the Court is the plaintiffs' motion and memorandum for reconsideration and for modification of its Order granting a stay (#6). In its motion, the plaintiffs assert that the Court should rule on their motion to remand because the Court lacks subject matter jurisdiction. The plaintiffs argue that they have legitimate causes of action against Michelle Herren, Robert H. Falke, Linda Lorch and Duane J. Grace, individuals currently or formerly employed as sales representatives for Wyeth.

    The Court is of the opinion that these sales representatives cannot warrant or make representations about pharmaceutical products that would override the disclosure that is required of and made by the manufacturer of the drugs. Moreover, there is no evidence or pleading indicating that the sales representatives are involved in the packaging or advertising of the drugs in question in this suit. Therefore, the Court holds that the individual defendants are fraudulently joined. The motion to remand is Denied.

    It is so ORDERED.

    Signed this 29th day of January, 2004.

_____
KENNETH M. HOYT
United States District Judge

# EXHIBIT 7(J)

SS

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

**FILED**

**MAR 1 5 2004**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

**DEBRA A. KOLLMAN,**

            **Plaintiff,**

-vs-

                    **Case No. A-04-CA-034-SS**

**WYETH, et al.,**

            **Defendants.**

---

## O R D E R

BE IT REMEMBERED on the 15th day of March 2004 the Court reviewed the file in the above-styled cause, and specifically Plaintiff's Motion to Remand [#6] and appendix in support thereof [#7], Wyeth's response thereto [#12], and Wyeth's Unopposed Motion to Continue All Deadlines Under Federal Rules of Civil Procedure 26 and 16 and Local Rule CV-16 [#13]. Having considered the motions, responses, relevant law and the case file as a whole, the Court now enters the following opinion and orders.

## Background

This case involves the Plaintiff's alleged use of the diet drugs fenfluramine, phentermine, and/or Redux, the combination of which is commonly referred to as "fen-phen." The Plaintiff, Debra Kollman, who resides in Austin County, Texas, opted out of a national class action settlement of fen-phen claims and filed this individual lawsuit. *See* Index of State Pleadings Ex. 2 ("Orig. Pet.") at ¶¶ 2-9. She sues several Wyeth entities, all foreign corporations, including Wyeth, Wyeth Pharmaceuticals, Inc., and Wyeth-Ayerst International, Inc. (collectively, "Wyeth"), allegedly Wyeth promoted, marketed, manufactured and distributed fenfluramine (Podimin and Redux). Orig. Pet.

*15*

¶ 10-13. She has also sued several manufacturers of phentermine, including Smithkline Beecham Corporation ("Smithkline"), GlaxoSmithKline, Gate Pharmaceuticals ("Gate"), and Medeva Pharmaceuticals, Inc., ("Medeva"). She asserts claims for negligence, strict products liability, and misrepresentations against the manufacturer defendants. In addition to the manufacturers, Kollman has sued her treating physcian Chester J. Flynn, M.D. for prescribing her the diet drugs, her pharmacy, Wal-Mart Pharmacy ("Wal-Mart"), for dispensing the drugs, and a Wyeth sales representative, Gary E. Rust, for promoting and marketting the drugs and making misrepresentations about their efficacy and safety. Orig. Pet. ¶¶ 18-20. Rust and Dr. Flynn are residents of Texas. Orig. Pet. ¶¶ 18, 20. Kollman contends she has suffered injuries as a proximate result of the Defendants' acts and omissions and seeks compensatory damages against them, jointly and severally. Orig. Pet. ¶¶ 70-73.

Kollman filed her petition in the 21st Judicial District Court of Washington County, Texas on May 29, 2003. On January 21, 2004, Wyeth removed the case to this Court on the basis of diversity jurisdiction, alleging Kollman had fraudulently joined the individual defendants and in a supplemental notice of removal, that she had failed to serve the other manufacturers . On February 23, 2004, Kollman filed a motion to remand.

### Analysis

Kollman contends you should remand this case for two reasons: (1) she has sued two Texas residents and therefore the Court is without diversity jurisdiction; and (2) Wyeth's removal was procedurally defective because it failed to obtain the consent of the other defendants in this case. Wyeth counters it was not required to obtain the consent of the two Texas defendant and removal was proper because Kollman's prescribing physcian and the Wyeth sales representative were both

fraudulently joined. Additionally, Wyeth contends Kollman has waived any procedural objection to removal because she filed her motion to remand after the deadline for doing so had expired and regardless, Wyeth did obtain the consent of Wal-Mart and was not required to obtain the consent of the other diverse defendants because they had not been served.

### I.    Fraudulent Joinder

This Court must decide whether Kollman's physcian, Flynn, or Wyeth sales representative, Rust, is a proper defendant in this case and, consequently, whether this Court has subject matter jurisdiction over the case under 28 U.S.C. § 1332. Wyeth alleges the detailer and physcian were fraudulently joined as defendants, in which case the Court would ignore their Texas citizenship for jurisdictional purposes. To establish Rust and Flynn were fraudulently joined, Wyeth must satisfy the heavy burden of showing there is no reasonable possibility Kollman could establish a cause of action against either individual, or that Kollman committed outright fraud in her recitation of the jurisdictional facts. *See Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). In evaluating a defendant's assertion of fraudulent joinder, a court must consider all of the factual allegations in the light most favorable to the plaintiff and resolve all of the contested issues of fact in favor of the plaintiff. *Burden,* 60 F.3d at 217.

However, a court may pierce the pleadings to determine fraudulent joinder and, even though the petition may state a claim against the in-state defendant, the case may be removed if the removing defendant demonstrates through summary judgment-type evidence outside the pleadings there is no reasonable basis to predict the plaintiff could establish a claim against the in-state defendant. *Badon v. R J R Nabisco, Inc.,* 224 F.3d 382, 389, 394 (5th Cir. 2000) ("*Badon I* "), *op.*

-3-

*after certified question declined,* 236 F.3d 282 (5th Cir. 2000) (*"Badon II"*) (holding no controversy exists to construe in favor of nonremoving party when it submits no evidence of contradictory facts in response to the evidence of the removing party); *see also B., Inc.,* 663 F.2d at 549 (affirming the appropriateness of considering deposition and affidavit evidence). Nevertheless, a court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. *B., Inc.,* 663 F.2d at 549. Thus, Wyeth must show, as a matter of law, "there is no reasonable basis for predicting that [Kollman] might establish liability on [her] claim against [Rust or Flynn]." *Badon I,* 224 F.3d at 390; *see also Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462 (5th Cir. 2003) (reaffirming that a "court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability . . . there must be a *reasonable* possibility of recovery, not merely a *theoretical* one.").

### A.    The Sales Representative Defendant

Wyeth contends Rust, the Wyeth detailer, was fraudulently joined because there is no reasonable basis to predict Kollman will prevail on her claims against him. In her state court petition, Kollman alleged the following specific allegations regarding Rust: (1) he failed to convey adequate warnings to her through her physician, (2) he negligently marketed and promoted fen-phen, (3) he made negligent misrepresentations regarding the safety and efficacy of fen-phen; (4) he negligently failed to provide sufficient instructions regarding the prescription of diet drugs, alone or in combination; (5) in the alternative, he, contrary to Wyeth authority, promoted phen-fen while intentionally not bringing up the side effects of the diet drugs; (6) in the alternative, he promoted Podomin and its combination prescription with phentermine to her physician despite Wyeth's instruction not to do so and despite a lack of FDA approval to promote such a combination; and (7)

in the alternative, he provided information to physicians regarding the safety and efficacy of fen-phen that went beyond what the FDA approved and Wyeth authorized. *See* Orig. Pet. ¶¶ 67-68.

This Court has already entered orders in several other cases denying the motions to remand of fen-phen plaintiffs who joined detailer defendants in order to defeat the Court's diversity jurisdiction. *See, e.g., Swinehart v. Wyeth, et al.,* A:03-CA-461-SS (W.D. Tex. Sept. 17, 2003); *Leonard v. Wyeth, et al.,* A:03-CA-463-SS (W.D. Tex. Sept. 17, 2003), *Palomino v. Wyeth et al.,* A:03-CA-464-SS (W.D. Tex. Sept. 17, 2003), *Budd v. Wyeth, et al.,* A:03-CA-465-SS (W.D. Tex. Sept. 17, 2003), and *Dionne v. Wyeth,* et al., A:03-CA-467-SS (W.D. Tex. Sept. 17, 2003). It is apparent from her factual allegations that Kollman is attempting to hold the Wyeth sales representative liable for failing to warn doctors about the possible dangers of prescribing fen-phen or for misrepresenting the safety of the diet drug. But as the Court explained in each of its aforementioned orders, there is no reasonable possibility that Texas courts will impose liability on the individual sales representative based on these allegations. For instance in *Dionne v. Wyeth*, after a thorough discussion of relevant Texas precedent regarding when agents of a corporation can be held liable for making misrepresentations, the Court held:

> Essentially, Dionne alleges the detailers passed information supplied by Wyeth to the physicians and they knew or should have known this information contained misstatements about the safety of the diet drug. This does not constitute an allegation of *knowing* participation in a misrepresentation on the part of a corporate agent (the detailer). If Dionne had alleged the sales representatives made up additional misleading information and told it to the doctors to induce them to prescribe the drugs, the way a realtor might misrepresent the conditions of a piece of property to make the sale, or if she had alleged the detailers were told of the dangers of fen-phen but intentionally did not disclose them to the doctors, then she might have stated a claim with a reasonable chance of success under the exception articulated in [*Kingston v. Helm*, 82 S.W.3d 755 (Tex. App. – Corpus Christi, 2002, pet. denied)]. Instead, the general rule applies and because the detailers do not have duty to research and ensure the safety fen-phen separate from Wyeth's duty, Dionne does not have a reasonable

> probability of success on her misrepresentation claims against the detailers under
> Texas law. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) (holding agents
> can only be held individually liable when they owe an independent duty of reasonable
> care to the injured party separate and apart from their employer's duty); *Firestone
> Steel Products Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (holding only those
> who design, manufacture or sell a product have a duty to warn).

*Dionne v. Wyeth*, et al., A:03-CA-467-SS (W.D. Tex. Sept. 17, 2003) at 6-7. Incorporating the

analysis of the aforementioned orders as if set out explicitly herein, the Court holds the detailer,

Rust, had no duty to warn Kollman (or her doctor) independent from Wyeth's duty and thus, there

is no reasonable probability Kollman will prevail on her negligence or failure to warn claims against

Rust.

Additionally, with regard to Kollman's allegations suggesting Rust may have intentionally

misrepresented the efficacy and safety of the diet drugs contrary to directions from Wyeth not to do

so, Wyeth has submitted summary judgment type evidence in the form of Rust's sworn declaration,

uncontroverted by Kollman, that negates any allegation that he ever made any knowing

misrepresentations about the diet drugs at issue. *See* Notice of Removal Ex. Z1 ("Rust Decl.") In

his declaration, Rust refutes that he ever intentionally misrepresented the safety or efficacy of Redux

and explained it was his job to pass on the FDA-approved information provided to the detailers by

Wyeth. Id. ¶¶ 2, 4. Rust swears he did not know of the alleged correlation between the use of fen-

phen and heart valve damage until the allegation was first publicized. Id. ¶ 6. Rust also states in his

declaration that he never sold the fen-phen drugs to any health care professional, did not distribute,

design, manufacture, or test the drugs, and did not make any "representations regarding Pondimin,

Redux, phentermine or the 'fen-phen' combination, whether by way of promotion or advertising or

otherwise to the general public." Id. ¶¶ 7-9. He further swears he "never intentionally

misrepresented the safety or efficacy of Podomin, Redux, phentermine or the 'fen-phen' combination or the state of testing of the 'phen/fen' combination to any physician or to any diet drug user." *Id.* ¶ 9.

So if Kollman had produced any contradictory evidence, even if it was less credible than Wyeth's, she may have created a fact issue which the court would have had to resolve in her favor. But if anything, Kollman has presented evidence substantiating Rust's statement that he only passed on information given to him by Wyeth. *See* Mot. to Remand App. A (deposition excerpts of Wyeth's Texas Area Business Director, Lacy Gray). In spite of the Rust declaration submitted by Wyeth, Kollman makes several misleading statements to the Court such as "Wyeth does not . . . provide evidence that Defendant, Gary E. Rust, did not depart from the course and scope of Wyeth employment." Mot. to Remand ¶ 19. Later in her motion Kollman maintains the Court should find Rust's declaration insufficient as a matter of law because whether or not he made misrepresentations to the "general public" is irrelevant to whether he made them to this plaintiff's doctor. Yet Rust in his declaration swears he "never intentionally misrepresented the safety or efficacy of [the diet drugs] . . . to any physician or to *any* diet drug user." Rust Decl. ¶ 9 (emphasis added).

On a motion to remand, the Court must only resolve fact disputes in a plaintiff's favor when "when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon I,* 224 F.3d at 394 (emphasis in original). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support its claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). Because in this case, Wyeth has negated the facts which might form the basis of a state law claim, the Court holds Rust was fraudulently joined. The "mere theoretical

-7-

possibility of recovery under local law" does not preclude removal. *Badon II,* 236 F.3d at 286; *see also Ross,* 344 F.3d at 462.

**B.     The Prescribing Defendant**

Next Wyeth contends there is no reasonable possibility Kollman could succeed on her medical negligence and misrepresentation claims against Dr. Flynn because her claims are barred by the statute of limitations.   A defendant is fraudulently joined if a statute of limitations bars the claims asserted against him. *See Ross,* 334 F.3d at 463-466 (affirming the district court's denial of remand where claims against non-diverse defendants were barred by the state law statute of limitations).   Dr. Flynn asserted the affirmative defense of limitations in an answer filed in state court. *See* Index of State Court Pleadings, Ex. 6 (Flynn Ans.) at 1.   Under the Texas Medical Liability and Insurance Improvement Act, all health care liability claims must be filed within two years of the tort or medical treatment that is the subject of the claim. *See* TEX. REV. CIV. STAT. art. 4590i, § 10.01.   The parties do not dispute that fen-phen was taken off the market in 1997. Therefore, without tolling, the limitations period would have expired in 1999.

Kollman contends the equitable doctrine of fraudulent concealment estops Dr. Flynn from relying on the statute of limitations. Orig. Pet. ¶ 33.  She alleges Dr. Flynn continued to assure her there was no association between her use of diet drugs and her physical problems even after he was aware of the drugs' hazards. *Id.* ¶33.  The doctrine of fraudulent concealment is as follows: "Where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action from the party to whom it belongs, the defendant is estopped from relying on the defense of limitations until the party learns of the right of action or should have learned thereof through the exercise of reasonable diligence." *Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex. 1983).  The

-8-

estoppel effect ends when a plaintiff, exercising reasonable diligence, learned or should have learned

of facts, conditions or circumstances that would have caused a reasonable plaintiff to make an

inquiry that would have led to discovery of a cause of action. *Borderlon*, 661 S.W.2d at 909.

Although Kollman alleges Dr. Flynn knew of the hazards of the diet drugs and concealed them from

her, Wyeth contends even if the doctor fraudulently concealed Kollman's cause of action, Kollman

knew or should have known facts that would have led her to discover her cause of action by the end

of 1997 because of extensive publicity concerning the cardiac risks of fen-phen.

Kollman also argues the open courts provision of the Texas Constitution relieves her from

the statute of limitations. *See* TEX. CONST. art. I, § 13. Under that provision, a statute of limitations

is unconstitutional when it is impossible for a plaintiff to have discovered her cause of action within

the statute of limitations. *Gagnier v. Wichelhaus*, 17 S.W.3d 739, 743-44 (Tex. App. – Houston [1st

Dist.] 2000, pct. denied). However, as with the fraudulent concealment doctrine, the open courts

doctrine only tolls limitations until a plaintiff knew or should have known of facts that would lead

to discovery of her cause of action. *Helman v. Mateo*, 772 S.W.2d 64, 66 (Tex. 1989).

In *McCurdy v. Wyeth*, Cause No. A-03-CA-054-SS and *Turner v. Wyeth*, Cause No. A-03-

CA-648-SS, this Court addressed identical arguments regarding the fraudulent concealment doctrine

and the open courts provision of the Texas Constitution, considered the extensive media attention

surrounding fen-phen in late 1997, and held a reasonably diligent plaintiff should have learned about

the risks to fen-phen users of heart valve problems, as well as facts about the noticeable symptoms

of such problems long before December 31, 2000 (two year before the plaintiff in *McCurdy* filed

her lawsuit). *See McCurdy v. Wyeth*, Cause No. A-03-CA-054-SS, February 14, 2003 Order denying

remand (citing *Winters v. Diamond Shamrock Chem. Co.*, 941 F.Supp. 617, 622 (E. D. Tex. 1996)

(holding plaintiffs are charged with knowledge of facts made public through the media), *aff'd*, 149 F.3d 387 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999)); *Turner v. Wyeth*, Cause No. A-03-CA-648-SS, November 6, 2003 Order denying remand (citing *McCurdy* and adopting the rationale of that opinion). The Court adopts the rationale and analysis of these opinions as if set forth specifically herein and holds Kollman's claims against Dr. Flynn, not asserted until May 29, 2003, are barred by the statute of limitations. *See also Gracey v. Wyeth*, Cause No. A-03-CA-703-SS (W.D. Tex. Dec. 4, 2003) (holding the plaintiff's claims against her doctor asserted on May 27, 2003 barred by the statute of limitations). The question is not whether the facts in the media would have clearly established that fen-phen caused heart valve damage. The issue is when Kollman would have been on reasonable notice to investigate whether she was suffering heart damage. Even considering there was some conflicting information in the media or conceding she may have received conflicting information from her physician, a reasonable plaintiff would nevertheless have investigated whether she had been injured by fen-phen prior to May 2001 (two years before Kollman filed this lawsuit).

## II.    Consent

Kollman also argues this case should be remanded because Wyeth did not obtain the consent of the other defendants when it removed this case. Generally speaking, the removing defendant must obtain the consent of all co-defendants in order to remove a case to federal court. *See* 28 U.S.C. § 1446(a); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.), *cert. denied*, 510 U.S. 868 (1993). First of all, Kollman has waived this non-jurisdictional argument because Wyeth filed its notice of removal on January 21, 2004 and therefore Kollman should have filed her motion to remand on or before Friday, February 20, 2004, but did not do so until Monday February 23, 2004. *See Catepillar Inc. v. Lewis*, 519 U.S. 61, 69 (1996) (holding a that if a defendant's notice of

removal is deficient in some way other than because the Court's lacks subject matter jurisdiction, the plaintiff must move for remand within 30 days after the defendant files notice of removal or else the plaintiff's objection is waived); *see also* FED. R. CIV. P 6(a) (explaining the rules for calculating deadlines).

Moreover, the removing defendant need not obtain the consent of a defendant who has not been served at the time or removal or who is fraudulently joined. *See Getty Oil Corp. v. Ins. Co. of North Am.,* 841 F.2d 1254, 1262 n.9 (5th Cir. 1988) (explaining § 1446(a) "has been interpreted to require that all then served properly joined defendants join in the removal petition"); *Jernigan,* 989 F.2d at 815 (emphasizing the consent of a fraudulently-joined defendant is unnecessary). The Court held above the sales representative Rust and prescribing physician Flynn were both fraudulently joined. Thus, their consent is not necessary to removal. Additionally, Wal-Mart, another diverse defendant, did consent to Wyeth's removal. *See* Notice of Removal Ex. Z-2. The written consents of the other remaining diverse defendants are not required because they had not been served at the time Wyeth removed. *See* Wyeth's Supp. Notice of Removal at 2 (explaining there is no evidence the phentermine defendants have been served); Index of State Court Pleadings Ex. 3 (providing citations but no officer's returns for Smithkline, GlaxoSmithKline, Medeva, and Gate).[1]

In accordance with the foregoing:

IT IS ORDERED that Plaintiff's Motion to Remand [#6] is DENIED.

---

[1]The Court notes Kollman does not even address Wyeth's argument that the phentermine defendants had not been served in her motion to remand and therefore, although she had to opportunity to counter Wyeth's assertion these defendants had not been served, she has chosen not to do so.

-11-

IT IS FURTHER ORDERED that Wyeth's Unopposed Motion to Continue All Deadlines Under Federal Rules of Civil Procedure 26 and 16 and Local Rule CV-16 [#13] is GRANTED.

SIGNED this the 15th day of March 2004.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

# EXHIBIT 7(K)

FILED

2007 Mar-07 PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
WILLIAM  D.  MCCLUSKEY,  as  }
Surviving   Spouse   and   as  }
Personal Representative of the  }
Estate of Mary L. McMcluskey,  }
                                }
         Plaintiff,             }        CIVIL ACTION NO.
                                }        07-AR-0232-S
v.                              }
                                }
MERCK & CO., INC., a foreign    }
corporation, et al.,            }
                                }
         Defendants.            }
```

## MEMORANDUM OPINION

Before the court is the motion of plaintiff, William D. McCluskey ("McCluskey"), to remand the above-entitled action to the Circuit Court of Jefferson County, Alabama, from which it was removed by defendant, Merck & Co., Inc. ("Merck"). Also before the court are the respective motions of defendants Cedric Anderson and Anna Leigh Webb to dismiss the action as to them, and the motion of McCluskey to dismiss the action as against defendant James A. Stewart. Finally, the court has for consideration the motions of various defendants to stay all proceedings in this action pending its possible transfer to the United States District Court for the Eastern District of Louisiana for consolidated and coordinated pretrial proceedings as part of *In re Vioxx Marketing, Sales Practices, and Prods. Liab. Litig.* MDL No. 1657, and/or to the United States District Court for the Northern District of California as part of *In re Bextra and Celebrex Marketing, Sales*

*Practices and Prods. Liab. Litig.*, MDL-1699. For the reasons that follow, McClusky's motion to remand will be denied, and his motion to dismiss his action against Stewart will be granted. The court will grant all motions filed by the various defendants.

*Procedural History*

McCluskey, a citizen of the state of Alabama, filed this action in the Circuit Court of Jefferson County on December 13, 2006. McCluskey asserted various tort and contract claims related to the drugs VIOXX and CELEBREX, the use of which McCluskey says proximately caused the death of his wife, Mary L. McCluskey ("Mary McCluskey"). The corporate defendants named in McCluskey's complaint were Merck, Pfizer, Inc. ("Pfizer"), Pharmacia Corporation ("Pfizer"), Monsanto Company ("Monsanto"), and G. D. Searle LLC ("Searle"). McCluskey also named individuals Stewart, Webb, Anderson, Travis Taylor, and Robert Vandelune as defendants. Merck is the manufacturer and seller of VIOXX, and Pfizer, Pharmacia, Monsanto, and Searle are companies involved in the manufacture and sale of CELEBREX. According to McCluskey's complaint, Stewart, Webb, Anderson, Taylor, and Vandelune are representatives of one or more of the corporate defendants who marketed and promoted VIOXX and CELEBREX to the health care providers that prescribed or provided the drugs to the decedent, Mary McCluskey. Although none of the corporate defendants are citizens of Alabama, each individual defendant is an Alabama

2

citizen.   In  addition  to  the  named  defendants,  McCluskey  also identified in his complaint four fictitious defendants, who can be ignored for purposes of this opinion.  Merck removed the action to this court on February 2, 2007, under 28 U.S.C. § 1441.  Pfizer, Pharmacia, Monsanto, and Searle timely joined in Merck's removal on February 6, 2007.

Anderson, Webb, and Stewart are or were employees of Merck, and  Taylor  and  Vandelune  are  currently  employees  of  Pfizer. Stewart was still a defendant when this action was removed from state court, but McCluskey filed an unopposed motion to dismiss his action against Stewart while the action was still proceeding in state court, and Stewart is not considered a necessary party.  The court considers that motion to have carried over when the removal was effected, and will grant McCluskey's unopposed motion.

In support of its notice of removal, Merck filed declarations or affidavits signed by the four remaining individual defendants (together, the "individual resident defendants").  The declarations of Anderson and Webb, which the declarants signed under the penalty of perjury, are materially identical:

1.    My name is Cedric Anderson.[1]  I am over twenty-one years of age, am of sound mind, and am competent to make this declaration.  This declaration is based upon my personal knowledge.

---

[1] The first sentence of Webb's declaration states: "My name is Anna Leigh Webb."

3

2.     At no time did I ever provide Vioxx® ("Vioxx") or information concerning Vioxx directly to Mary McCluskey.

3.     I am not a physician, and have therefore never prescribed Vioxx.  I am also not a pharmacist and therefore have never written or filled a prescription for Vioxx as a pharmacist.  The information that I used during the course of my employment was provided to me by my employer. Specifically, Merck provided me with the FDA-approved prescribing information and the other information I used in speaking with physicians about Vioxx.  I had no involvement in the development or preparation of prescribing information for Vioxx, and did not have responsibility for the content or other written warnings concerning Vioxx contained in other information provided to me by my employer.  I was not expected, as a Professional Representative, to conduct independent research regarding drugs I detailed.  I was not expected to review independent scientific studies published in journals unless Merck supplied them to me.

4.     At no time did I have any involvement at all with the manufacture, development, or testing of Vioxx. The physicians with whom I dealt and on whom I called in my job were highly skilled professionals. They were, in my judgment and to the best of my knowledge, in a better position than I to make determinations concerning prescribing Vioxx.  I had no dealings at all at any time with any patients of any of the physicians on whom I called, and had no knowledge or information of any of those patients' medical histories, symptoms, prognoses, or courses of treatment.

5.     At no time did I ever sell, offer to sell or take orders for the sale of Vioxx to patients. Physicians upon whom I would call would write their prescriptions for Vioxx based upon their own independent medical knowledge and judgment and I would not have direct knowledge of any specific prescriptions these physicians may have written for individual patients including but not limited to Mary McCluskey.

4

6.   I have never promoted or detailed Vioxx in Jefferson County, Alabama.

7.   I never participated in, nor was I ever instructed or trained, nor did I ever receive any materials relating to any "Dodgeball program."

8.   I have never met nor spoken with Mary McCluskey.

9.   I made no knowing misrepresentation concerning the safety or efficacy if Vioxx and acted in good faith at all times in my dealings with physicians who may have prescribed Vioxx.

10.   I have never made any presentations to the general public regarding Vioxx.

There are also no material differences between the above and the

notarized affidavits signed by Taylor and Vandelune.   Taylor's

affidavit states:

1.   I am over the age of twenty-one years and am otherwise competent to make this affidavit.   This affidavit is based upon my personal knowledge.

2.   I am currently employed as a pharmaceutical representative (also known as a "detailer") for Pfizer Inc ("Pfizer").   I have been employed by Pfizer as a detailer since February 9, 2004.[2]

3.   As a detailer, I visit physicians and healthcare providers' offices and provide them with FDA-approved package inserts and other FDA-approved information about Pfizer's products, which is referred to as "detailing."   My job is to make the physician aware or certain of Pfizer's products, so that he or she can consider whether to prescribe them for particular patients.

4.   I am not a physician or pharmacist.   I have no specialized medical or pharmacological education. The information and material I use to detail Pfizer's drugs is derived exclusively from

_____

[2] Vandelune states in his affidavit that he has been employed by Pfizer as a detailer since 1985.

education provided to me by Pfizer. Pfizer provides me with the FDA-approved package inserts and other FDA-approved information for the medications I detail. I have no involvement in the development or preparation of package inserts for any drugs, and no control over content or other written warnings.

5.    As part of my job duties, I have detailed Celebrex® in the past. However, I do not know whether I visited with or provided any information about Celebrex® to plaintiff's prescribing physician because plaintiff has not identified him or her.

6.    At no time did I have any involvement with the design, manufacture, development or testing of the prescription medication Celebrex®, nor did I have any involvement in the FDA-approved package insert for Celebrex®.

7.    At no time did I ever sell, offer to sell, or take orders for the sale of Celebrex® to health care providers, physicians, or patients.

8.    I have never made any presentations to the general public concerning Celebrex®.

9.    I have never met or spoken with the Plaintiff, William D. McCluskey, or the Plaintiff's decedent, Mary L. McCluskey.

10.   I have never promoted or detailed Celebrex® in Jefferson County, Alabama.

*Analysis*

There is no dispute that Anderson, Webb, Taylor, Vandelune, and plaintiff McClusky are all Alabama citizens. Anticipating that this fact would destroy the complete diversity required to support removal jurisdiction, Merck and Pfizer argue that the citizenship of the individual resident defendants should be ignored because those defendants were fraudulently joined. *See*

*Tapscott v. M.S. Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996). According to Merck and Pfizer, there is no possibility that McCluskey can prove *any* of his claims against the individual resident defendants. McCluskey counters that none of these defendants were fraudulently joined, and that this court therefore lacks subject matter jurisdiction to preside over this action because there is no complete diversity of citizenship.

I.    **Fraudulent Joinder**

If McCluskey has failed to state a colorable case against each and all of the individual resident defendants, the court may disregard their citizenships and proceed to address the merits of Anderson's and Webb's motions to dismiss, and those of Merck, Pfizer, *et al.* to stay proceedings pending the possible transfer of this action. If, on the other hand, McCluskey did not fraudulently join any of the non-diverse defendants, there is incomplete diversity and the case must be remanded.

The type of fraudulent joinder defendants advance applies where there is no reasonable basis to predict that an Alabama court would find any of the individual resident defendants liable to McCluskey under any of his state-law theories, and, in fact, every reason to predict that the case will not proceed to final judgment against them. *See Legg v. Wyeth*, 428 F.3d 1317, 1324-25 (11th Cir. 2005); *see also Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962) (a defendant is fraudulently joined

7

where there is no possibility of recovery under state law for any claims against him). A heavy burden rests on the removing defendant to show that all non-diverse defendants were fraudulently joined. *Owens v. Life Ins. Co. of Georgia,* 289 F.Supp.2d 1319, 1324 (M.D. Ala. 2003); *see Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (removal must be strictly construed with all doubts resolved in favor of remand). As the Eleventh Circuit stated in *Triggs v. John Crump Toyota, Inc.*, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." 154 F.3d 1284, 1287 (11th Cir. 1998). The court bases its jurisdictional inquiry on the pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties, evaluating all factual issues and questions of controlling substantive law in plaintiff's favor. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11 Cir. 1998).

Removing defendants assert that they have satisfied this high burden. McCluskey counters that he has stated viable claims against the individual resident defendants (1) under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), and (2) for fraud, fraudulent misrepresentation, fraudulent suppression and concealment. Thus, the question is whether McCluskey has any

8

possibility of recovery against any of the individual resident

defendants under any of these claims.  If so, there is incomplete

diversity and this case was improvidently removed.

**A.    The AEMLD Claim**

In order to establish liability under the AEMLD, a plaintiff

must prove that the defendant manufactured and/or sold the

allegedly defective product.  *Turner v. Azalea Box Co.*, 508 So.2d

253, 254 (Ala. 1987).  However, sales representatives who work

for pharmaceutical companies are not "sellers" or "suppliers" of

the drugs manufactured by the companies they represent for

purposes of the AEMLD.  *Bloodsworth v. Smith & Nephew*, 2005 WL

3470337, at * 6-*7 (M.D. Ala., Dec. 19, 2005).  In *Bloodsworth*,

the court was presented with a set of facts remarkably similar to

the one now at issue.  Plaintiffs in *Bloodsworth* asserted a claim

under the AEMLD against an orthopedic-hip-implant manufacturer,

one of that manufacturer's sales representatives, and a separate

manufacturer/seller.  The first defendant was not an Alabama

citizen, but the latter two defendants were non-diverse.  In its

opposition to plaintiff's motion to remand, the diverse

manufacturer offered an affidavit of the sales representative,

wherein the affiant stated that he had never spoken to the

injured plaintiff.  He did not, however, confirm or deny that he

was the individual who received purchase orders from the injured

plaintiff's surgeon.  The sales representative also attested that

he was "not involved in the design or manufacture of any [of manufacturer's] products used in [the injured plaintiff's] procedures," and that he did not provide any "warranties, express or implied, with respect to those products."  Judge Dement of the Middle District of Alabama concluded under these facts that the sales representative could not be deemed to be a "seller," and was therefore fraudulently joined as a defendant with respect to plaintiffs' AEMLD claim.  *See id.*

This case is similar to *Bloodsworth* inasmuch as all individual resident defendants have sworn that they did not personally sell or offer to sell VIOXX or CELEBREX to Mary McCluskey.  The declarations and affidavits of these defendants are not contradicted.  Taylor and Vandelune further submit that as "detailers" for Pfizer, they did not sell or offer to sell to *anyone* — whether to individual patients or to health-care professionals.  Moreover, similar to the case in *Bloodsworth*, neither Anderson nor Webb confirms or denies whether he or she sold VIOXX to the health-care provider or providers who treated Mary McCluskey — and neither individual could be expected to do so, since McCluskey has not identified the health-care providers who prescribed either of the drugs at issue to the decedent.  *See* Compl., at 35-41.  For these reasons, and for the remaining reasons set forth in *Bloodsworth*, the individual resident defendants can not be deemed to be "sellers" for purposes of the

AEMLD.  *See generally Bloodsworth*, 2005 WL 3470337, at *5-*7.
The individual resident defendants were therefore fraudulently
joined with respect to McCluskey's claim for relief under the
AEMLD.

**B.    The Fraud, Fraudulent Suppression, and Concealment
        Claim**

Under Alabama law, in order to state a claim for fraud and
fraudulent misrepresentation, a plaintiff must show that the
defendant made a misrepresentation of material fact, that he made
it willfully to deceive, recklessly, without knowledge, or
mistakenly, that the misrepresentation was justifiably relied on
by the plaintiff under the circumstances, and that the
misrepresentation caused damage as a proximate consequence.  Ala.
Code § 6-5-101.  The Supreme Court of Alabama has held that
"those who are only conduits through which faulty information is
supplied by one person to a third person cannot be held liable
for fraud unless they acted in bad faith."  *Fisher v. Comer
Plantation, Inc.*, 772 So.2d 455 (Ala. 2000).

Here, each of the individual resident defendants has
tendered a declaration or affidavit indicating that he or she was
never involved in the design, testing, or manufacture of VIOXX or
CELEBREX, is not trained as a physician or pharmacologist, and
has received all information regarding VIOXX or CELEBREX from the
respective employer.  In his motion to remand, McCluskey submits
no evidence that could discredit the individual resident

11

defendants' affidavits and declarations, so there is no issue of fact which should be resolved in favor of this court's finding that it lacks subject-matter jurisdiction. *See Wyeth*, 428 F.3d at 1323. In accordance with the undisputed facts contained in the affidavits and declarations, if Mary McCluskey was supplied with faulty information when she was prescribed VIOXX and CELEBREX, then the individual resident defendants' roles in supplying that information were those of mere "conduits." Accordingly, there is no reasonable basis to predict that an Alabama court would find the individual resident defendants liable to McCluskey for fraud, fraudulent suppression, and concealment, and these defendants were therefore fraudulently joined with respect to these claims. *See id.* at 1323-25 (finding that the record supported defendant drug manufacturer's contention that defendant salesperson was fraudulently joined, when there was no evidence that salesperson knew or should have known of prescription drug's allegedly dangerous effects).

Because all of the individual resident defendants were fraudulently joined with respect to each claim that McCluskey says he can prove against them, the court will disregard the citizenship of the individual resident defendants and will presume that complete diversity exists. Since there is also no dispute that the jurisdictional amount-in-controversy requirement has been met, McCluskey's motion to remand will be denied without

12

prejudice to its being re-filed if subsequently discovered facts provide a basis for its reconsideration.  Anderson's and Webb's respective motions to dismiss for failure to state a claim will be granted.

## II.  Defendants' Motions to Stay Proceedings

After this action was removed, Merck filed a motion to stay proceedings pending the possible transfer of the action against it for consolidated pretrial proceedings as part of *In re Vioxx Marketing, Sales Practices, and Prods. Liab. Litig.*, MDL No. 1657.  Similarly, defendants Pfizer, Pharmacia, Searle, Taylor, and Vandelune, filed a motion for this court to stay proceedings pending the possible transfer to *In re Bextra and Celebrex Marketing, Sales Practices and Prods. Liab. Litig.*, MDL-1699.  These MDL proceedings have been established to coordinate all product-liability cases involving the alleged health risks that arise from taking VIOXX and CELEBREX, respectively.

When deciding whether to issue a stay pending the Judicial Panel on Multidistrict Litigation's ("MDL Panel") decision on transfer of an individual action, the court looks at three factors: (1) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact coordinated; (2) hardship and inequality to the moving party if the action is not stayed; and (3) potential prejudice to the non-

13

moving party.  *See Rivers v. The Walt Disney Co.*, 980 F. Supp.

1358, 1360 (C.D. Cal. 1997).  In his opposition to the motions to

stay, McCluskey urges the court to deny the motions only until it

has determined whether it has subject matter jurisdiction or

whether the action should be remanded to state court.  He does

not argue that if the action is **not** remanded, the motion to stay

should not be granted.  Accordingly, the court sees no potential

prejudice to McCluskey if this action is stayed.  Moreover, the

court agrees with the various defendants that judicial resources

will best be allocated if the stay request is granted, especially

considering that the MDL Panel will likely decide whether to

transfer this action within the next two to four weeks.  Finally,

defendants' suggestions of hardship and inequality if the action

is not stayed make sense.  Accordingly, the court will grant

defendants' motions to stay.

*Conclusion*

In accordance with the foregoing, McCluskey's motion to remand

will be denied, and his motion to dismiss defendant Stewart will be

granted.  The motions to stay proceedings, filed by various

defendants, will be granted.  Anderson's and Webb's motions to

dismiss this action as to them will also be granted.

DONE this 7th day of March, 2007.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

# EXHIBIT 7(L)

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

LORI SOBKOWSKI,

        Plaintiff,

-vs-
                              Case No. 5:04-cv-96-Oc-10GRJ

WYETH, INC. f/k/a American Home
Products Corporation, WYETH-AYERST
LABORATORIES, INC., WYETH
PHARMACEUTICALS, INC., INDEVUS
PHARMACEUTICALS, INC. f/k/a
Interneuron Pharmaceuticals, Inc., PAUL
W. PORTER, ANGELA KIRBY, M.
ALYSEN TROY,

        Defendants.



---

### O R D E R

    This case is one of many product liability cases involving the diet drug Redux (dexfenfluramine), said to cause primary pulmonary hypertension - a condition affecting the lungs. The Plaintiff, a resident of Florida, filed her complaint in a Florida court against several out-of-state pharmaceutical companies (collectively, "Wyeth") and two pharmaceutical sales representatives who are also Florida residents. When Defendant Wyeth removed the case to this Court on the theory that joinder of the non-diverse parties was "fraudulent," the Plaintiff moved for remand (Doc. 9). The Magistrate Judge issued a report (Doc. 26) recommending that the motion to remand be denied. The Plaintiff has filed



an objection (Doc. 30, 31) to the report and recommendation, and Wyeth has filed its response (Doc. 40).

Upon an independent review of the file and upon due consideration, the Court concludes that the Magistrate's report and recommendation is due to be adopted, confirmed, and made a part hereof with the following modifications or qualifications concerning the analysis of the fraud and negligence claims against the sales representatives.

A defendant is not "fraudulently" joined if there is an "arguably reasonable basis for predicting that the state law might impose liability on the facts involved."[1] Stated another way, if there is "even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."[2] Accordingly, the possibility that the non-diverse Defendants would be held liable in a Florida court must have a reasonable basis in the facts; it must be more than merely a theoretical abstraction.[3]

The Magistrate Judge found, and the Court agrees, that the extant facts, consisting of the pleadings and affidavits on file, when viewed in the light most favorable to the Plaintiff, permit no reasonable inferences to be drawn in favor of the Plaintiff's claims

---

[1] Crowe v. Coleman, 113 F.3d 1536, 1540 (11th Cir. 1997) (quoting Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 176-77 (5th Cir. 1968)).

[2] Id. at 1538.

[3] Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002).



against the sales representatives. Even assuming there is evidentiary support for the contention that individuals in Wyeth's upper management had advance knowledge of the harmful effects of Redux[4] and, further, that one of the non-diverse sales representative defendants "discussed Redux completely"[5] with the Plaintiff's doctor prior to his prescribing the drug to the Plaintiff,[6] the evidence, without more, does not give rise to a reasonable inference that the sales representative knew or should have known of the drug's harmful effects. In short, there is no reasonable basis for predicting that a Florida court would impose liability on any one of the non-diverse sales representative defendants. There is only a theoretical possibility, devoid of factual basis, that the sales representative had or should have had advance or special knowledge about the drug and failed to communicate that knowledge to the doctor.[7]

---

[4] Of course, the Court expresses no opinion as to whether the Plaintiff's claims against Wyeth may survive summary judgment.

[5] Doc. 9, affidavit of Dr. Rodger, exh. 3.

[6] The Court disagrees with the Magistrate Judge's finding that the evidence shows "the sales representatives actually visited with Dr. Rodger, *after* he had prescribed Redux to Plaintiff." The first entry on the "detailing statement," which documents visits by sales representatives with Dr. Rodger, is an entry dated June 17, 1996, which reads "discussed Redux completely." See Doc. 9, affidavit of Dr. Rodger, exh. 3. Dr. Rodger wrote the Plaintiff a prescription for Redux on June 21, 1996. See Doc. 2. The Court agrees with all other findings concerning the "detailing statement."

[7] Although the Plaintiff laments that she has not had a full opportunity for discovery, there is nothing in the record to suggest that discovery would provide evidentiary support for the allegations and other factual contentions in the complaint concerning the sales representative defendants. See Fed. R. Civ. P. 11(b)(3).

3

Accordingly the Court is satisfied that the sales representatives were joined only to prevent removal, and it is therefore adjudged that:

(1) the report and recommendation of the Magistrate Judge (Doc. 26) is adopted, confirmed, and made a part hereof as modified above; and

(2) the Plaintiff's motion to remand (Doc. 9) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this __24 th__ day of June, 2004.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Hon. Gary R. Jones, United States Magistrate Judge
             Counsel of Record

4

F I L E   C O P Y

Date Printed: 06/24/2004

Notice sent to:

    \_\_\_\_   William E. Lawton, Esq.
          Dean, Ringers, Morgan and Lawton, P.A.
          201 E. Pine St., Suite 1200
          P.O. Box 2928
          Orlando, FL  32802-2928

          5:04-cv-00096    ail

    \_\_\_\_   Lamar Dwight Oxford, Esq.
          Dean, Ringers, Morgan and Lawton, P.A.
          201 E. Pine St., Suite 1200
          P.O. Box 2928
          Orlando, FL  32802-2928

          5:04-cv-00096    ail

    \_\_\_\_   Pierre Seacord, Esq.
          Ringer, Henry, Buckley & Seacord, P.A.
          14 E. Washington St., Suite 200
          P.O. Box 4922
          Orlando, FL  32802-4922

          5:04-cv-00096    ail

    \_\_\_\_   Geoffrey D. Ringer, Esq.
          Ringer, Henry, Buckley & Seacord, P.A.
          14 E. Washington St., Suite 200
          P.O. Box 4922
          Orlando, FL  32802-4922

          5:04-cv-00096    ail

    \_\_\_\_   Gregory J. Bubalo, Esq.
          Becker Law Office, LLC
          Louisville Galleria
          800 Brown & Williamson Tower
          Louisville, KY  40202

          5:04-cv-00096    ail

    \_\_\_\_   Kevin M. Adams, Esq.
          Becker Law Office, LLC
          Louisville Galleria
          800 Brown & Williamson Tower
          Louisville, KY  40202

          5:04-cv-00096    ail

    \_\_\_\_   Michael L. Williams, Esq.
          Becker Law Office, LLC

Louisvil )Galleria
800 Brown & Williamson Tower
Louisville, KY  40202

5:04-cv-00096    ail

_____  Linda C. Love, Esq.
Williams, Dailey, O'Leary,
Craine & Love, P.C.
1001 S.W. Fifth Ave., Suite 1900
Portland, OR  97204

5:04-cv-00096    ail

_____  R. Benjamine Reid, Esq.
Carlton Fields, P.A.
4000 Bank of America Tower
100 S.E. 2nd St.
P.O. Box 019101
Miami, FL  33131-9101

5:04-cv-00096    ail



FILED

'04 MAY 17 PM 5:21

CLERK US DISTRICT COURT
OCALA FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

LORI SOBKOWSKI,

        Plaintiff,

v.

        Case No.  5:04-cv-96-Oc-10GRJ

WYETH, INC. f/k/a American Home Products
Corporation, WYETH-AYERST
LABORATORIES, INC., WYETH
PHARMACEUTICALS, INC., INDEVUS
PHARMACEUTICALS, INC. f/k/a Interneuron
Pharmaceuticals, Inc., PAUL W. PORTIER,
ANGELA KIRBY, M. ALYSEN TROY,

        Defendants.

_____

### REPORT AND RECOMMENDATION[1]

    Pending before the Court is Plaintiff's Motion to Remand (Doc. 9) in which
Plaintiff requests the Court to remand this action to the Circuit Court for the Fifth
Judicial Circuit in and for Lake County, Florida. Defendants Wyeth, Potier, Kirby,
and Troy have filed a memorandum in opposition to Plaintiff's Motion (Doc. 20),
and the matter is now ripe for the Court's consideration. For the reasons discussed
below, the Court finds that Plaintiff's Motion to Remand (Doc. 9) is due to be
**DENIED.**

_____

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule
6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation.
Failure to file timely objections shall bar the party from a *de novo* determination by a district judge
and from attacking factual findings on appeal.



EXHIBIT
26



26

## I. BACKGROUND & FACTS

On October 30, 2003, Plaintiff, a resident of Florida, filed this action in Florida state court against four companies,[2] each of which is considered a foreign entity for the purposes of diversity. Plaintiff also named as defendants Wyeth sales representatives Paul Potier, Angela Kirby (now known as Angela Richards), and Alysen Troy ("sales representatives").[3] While Potier and Kirby are Florida residents,[4] Ms. Troy avers in a sworn affidavit that she has been a resident of Illinois at all times since May 1998 - well before Plaintiff filed her Complaint in October 2003.[5] Plaintiff has provided nothing to rebut such evidence. Because "diversity is determined when the suit is instituted and not when a cause of action arose,"[6] Troy is deemed a diverse party for the purposes of the Court's resolution of Plaintiff's motion to remand.

According to the allegations contained in Plaintiff's First Amended Complaint[7] ("Complaint"), Plaintiff developed Primary Pulmonary Hypertension

---

[2] Hereinafter, "Wyeth."

[3] According to Wyeth, "The job of sales representatives, also known as 'detailers,' is to ensure that physicians are aware of Wyeth's products so they can consider whether to prescribe them. Among other things, detailers deliver FDA-approved package inserts and other FDA-approved information [...] The FDA-approved inserts that the detailers provide disclose the drug's pharmacological properties, indications and contraindications, and known side effects." See Wyeth's Notice of Removal, Doc. 1, ¶ 24.

[4] See Wyeth's Memorandum in Opposition to Plaintiff's Motion to Remand, Doc. 20 at 8.

[5] Id. at Ex. 12.

[6] Jones v. Law Firm of Hill and Ponton, 141 F. Supp. 2d 1349, 1354-55 (M.D. Fla. 2001).

[7] Doc. 2.

("PPH")[8] as a result of ingesting Redux[9] diet pills which were prescribed by her physician in 1996.[10] In brief summary, Plaintiff claims that the sales representatives promoted Redux and encouraged Plaintiff's physician to prescribe the drug to his patients even though the sales representatives were aware that the drug caused PPH and other life-threatening conditions and was otherwise ineffective.[11]

Counts six through eleven of the Amended Complaint purport to allege claims against the sales representatives for civil conspiracy, misrepresentation by seller of chattel, negligence, fraud, breach of express warranty, and breach of implied warranty.[12]

Wyeth removed the case to this Court on March 15, 2004, pursuant to 28 U.S.C. §1441.[13] In its Notice of Removal, Wyeth claimed that the sales representatives have been fraudulently joined and that their presence in this action,

---

[8] Primary pulmonary hypertension is a condition where pulmonary capillaries in the lungs constrict, thereby elevating blood pressure. The signs and symptoms include fatigue, dizziness, syncope (fainting), dyspnea (labored breathing), swelling of ankles or legs, chest pain, and palpitations. It may be treated with drug therapy involving calcium-channel blockers or vasodilators, but a lung transplant is required for patients with severe PPH. See J.E. Schmidt, Attorneys' Dictionary of Medicine Vol. 4 (2003).

[9] Redux is the popular/brand name for dexfenfluramine. See Complaint, Doc. 2 at p.2. According to Plaintiff, Redux is designed to suppress one's appetite by increasing blood levels of the neurotransmitter, serotonin. Serotonin is a chemical that makes a person feel full after eating. (Id. at p. 7.)

[10] Plaintiff's Amended Complaint, Doc. 2. at p. 2.

[11] Id. at 1-61.

[12] Id.

[13] Notice of Removal, Doc. 1.

therefore, does not destroy diversity of citizenship.[14] Wyeth claims that the sales representatives were fraudulently joined because "[p]laintiff has no reasonable possibility of prevailing on any of the claims pled against them, and no good faith intent to pursue them to judgment."[15]

Plaintiff filed her motion to remand on March 22, 2004, claiming that the case should be remanded because she has stated several viable causes of action against Wyeth and its sales representatives under Florida state law and thus joinder of the sales representatives was not fraudulent joinder.[16]

## II. LEGAL STANDARD

A party may remove any case from a state court which originally could have been brought in federal court,[17] but the removing party bears the burden of establishing subject matter jurisdiction.[18] Any doubts regarding the existence of removal jurisdiction should be resolved in favor of the non-removing party.[19]

To satisfy its burden, Wyeth claims that, pursuant to 28 U.S.C. §1332, the Court has diversity jurisdiction over this case because the sales representatives, the only non-diverse defendants, have been fraudulently joined by Plaintiff.

---

[14] *Id.* at ¶10.

[15] *Id.* at ¶3.

[16] Plaintiff's Emergency Motion to Remand, Doc. 9.

[17] *See* 28 U.S.C. §1441(a)

[18] University of Alabama v. The American Tobacco Co., 168 F. 3d 405, 410 (11th Cir. 1999).

[19] Pacheco de Perez v. AT&T Co., 139 F. 3d 1368, 1373 (11th Cir. 1998).

Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.[20] The Eleventh Circuit has recognized three situations in which fraudulent joinder arises.[21] The first is when there is no possibility that the plaintiff can prove a cause of action against the resident defendant.[22] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts.[23] Finally, fraudulent joinder arises where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant.[24]

As to the first type of fraudulent joinder, which is the only type relevant to the Court's resolution of the instant motion to remand, "if there is even a possibility that a state court would find the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper

---

[20] Triggs v. John Crump Toyota, Inc., 154 F. 3d 1284, 1287 (11th Cir. 1998).

[21] Id. at 1287.

[22] Id. Citing Coker v. Amoco Oil Co., 709 F. 2d 1433, 1440 (11th Cir. 1983), superceded by statute on other grounds, see Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F. 2d 1533 (11th Cir. 1993).

[23] Triggs at 1287 citing Coker at 1440.

[24] Id. Citing Tapscott v. MS Dealer Service Corp., 77 F. 3d 1353, 1355 (11th Cir. 1996). Defendant also claims that joinder of the detailer defendants was fraudulent because Plaintiff lacks the intent to obtain judgment against them. This basis for fraudulent joinder has been mentioned by the other district courts. See Samples v. Conoco, Inc., 165 F. Supp 2d 1303, 1319-1320 (N.D. Fla. 2001)(Plaintiff must have a real intention to obtain judgment against the non-diverse defendant as long as the potential for joint liability exists.) Citing Triggs at 1291. See Also Chicago Rock Island & Pac. Ry. Co. v. Schwyhart, 227 U.S. 184, 193-194 (1913).



and remand the case to state court."[25] The plaintiff need not have a "winning case" against the allegedly fraudulent defendant.[26] Rather, the Plaintiff need only have "a possibility of stating a valid cause of action in order for the joinder to be legitimate."[27] Conversely, the burden on Wyeth to establish fraudulent joinder is a heavy one to bear.[28]

"While the proceeding [...] for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under F. R. Civ. P. 56(b), the jurisdictional inquiry must not subsume substantive determination."[29] Accordingly, to determine whether a case should be remanded, the court "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff."[30] These determinations are based on the plaintiff's pleadings at the time of removal, and on the affidavits and deposition transcripts submitted by the parties.[31] However, in considering a motion to remand, a federal court must not "weigh the

---

[25] *Id. See Also* Tillman v. R.J. Reynolds Tobacco, 340 F. 3d 1277, 1279 (11th Cir. 2003).

[26] Triggs at 1287.

[27] *Id.*

[28] Crowe v. Coleman, 113 F. 3d 1536, 1538 (11th Cir. 1997) *Citing* B, Inc. v. Miller Brewing Co., 663 F. 2d 545, 549 (5th Cir. Unit A 1981).

[29] *Id.*

[30] *Id.*

[31] Crowe at 1538. *See also* Coker at 1440 (Both parties may submit affidavits and deposition transcripts to support their positions with respect to a motion to remand.)

merits of a plaintiff's claim beyond determining whether it is an arguable one under state law,"[32]

## III. DISCUSSION

### A. Fraud

Relying upon *Albertson v. Richardson-Merrell, Inc.*[33] Plaintiff argues that Florida law recognizes a cause of action in fraud against pharmaceutical sales representatives. In *Albertson*, Florida's Fourth District Court of Appeal reversed the trial court's dismissal of a fraud claim against a pharmaceutical sales representative. The *Albertson* court recognized that a plaintiff who ingested a drug prescribed by her doctor could maintain a cause of action for fraud directly against the sales representative where the sales representative was alleged to have misrepresented material facts concerning the safety of the drug at issue "well-knowing that the safety *vel non* of [the drug] was not as he represented."[34] Because *Albertson* was an appeal from an order granting a motion to dismiss there was no reason to discuss the facts supporting the fraud claim. Here, in contrast, and consistent with the standards for determining whether remand is appropriate the Court is required to go beyond the bare allegations in the complaint and consider the affidavits and other matters on file in determining whether there is a "reasonable basis for predicting that [Florida] law might impose liability on the facts involved."

---

[32] *Id.*

[33] 441 So. 2d 1146 (Fla. Dist. Ct. App. 1983).

[34] *Id.* at 1149-1150.

As Plaintiff points out, several judges in this district have relied upon *Albertson* in remanding diet drug cases in which Wyeth sales representatives have been named as defendants in similar counts alleging fraud.[35] However, the remand orders in most of these cases,[36] were based on the fact that Wyeth had failed to establish on the facts in those cases that the plaintiffs had no reasonable possibility of stating a valid cause of action against the sales representative. Indeed, in one case, *Little v. Wyeth Laboratories*, the court observed that Wyeth "presented nothing more to this Court than an allegation that the non-diverse individual Defendants were fraudulently joined by Plaintiff."[37]

Here, in contrast to those diet drug cases - and consistent with a number of similar diet drug cases in which courts have refused to remand cases[38] - Wyeth has provided affidavits and other materials, which directly attack the substance of

---

[35] *See, e.g.* Little v. Wyeth Laboratories, Inc. et al, Case No. 99-2244-Civ-T-17F (M.D. Fla. 1999); Hroncich v. Wyeth, Case No. 2:03-cv-659-FTM-29SPC (M.D. Fla. 2004); Parent v. Wyeth, Case No. 2:03-cv-626-FTM-29SPC(M.D. Fla. 2003); Wrisely v. Wyeth-Ayerst Laboratories, Inc. et al, Case No. 99-2246-Civ-T-26C (M.D. Fla. 1999); Morris v. Wyeth Laboratories Inc. et al, Case No. 99-2381-Civ-T-26C (M.D. Fla. 1999); Martin v. Wyeth Laboratories, Inc. et al, Case No. 99-2454-Civ-T-26A (M.D. Fla. 1999); Snell v. Wyeth Laboratories, Inc. et al, Case No. 99-2453-Civ-T-26A (M.D. Fla. 1999); Klausner v. Wyeth Laboratories, Inc. et al, Case No. 99-2254-CIV-T-24E (M.D. Fla. 1999); and Vale v. Wyeth Laboratories, Inc. et al, Case No. 99-2238-CIV-T-25E (M.D. Fla. 1999).

[36] Klausner was remanded because one of the named defendants neither signed the notice of removal nor explicitly stated its consent to removal on the record. The Wrisely opinion partly relied on Klausner. As Plaintiff does not argue about the issue of consent to removal, neither of the cases squarely apply to this matter.

[37] Little at p. 6.

[38] *See, e.g.* Kearney v. Wyeth, et al., Case No. 6:03-cv-288-Orl-31 KRS (M.D. Fla. 2003); Long v. Wyeth, et al., Case No. 6:03-cv-421-Orl-31JGG (M.D. Fla. 2003); Campana v. American Home Products Corp., Case No. 1:99cv250 MMP (N.D. Fla. 2000); Lewis v. Wyeth, et al., Case No. 3:04-cv-81 MCR (N.D. Fla. 2004).

Plaintiff's allegations regarding the representations made by the named sales representatives and when the misrepresentations were allegedly made. Although, the Plaintiff has filed her own affidavits, her evidence does not refute the evidence in Wyeth's affidavits and thus in deciding the motion to remand the Court does not need to resolve factual disputes.

In order to properly establish a claim for fraud, a plaintiff must allege: (1) a misrepresentation of material fact; (2)(a) knowledge of the representor of the misrepresentation, or (b) representations made by the representor with knowledge as to either their truth or falsity, or (c) representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induce the other to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation.[39]

While the Plaintiff has set forth in the Complaint[40] conclusory allegations against the sales representatives that track these elements, when these allegations are pierced by the affidavits filed by the parties, it is evident that even if Plaintiff's allegations are deemed true, they are insufficient to establish claims under Florida law against the sales representatives for fraud.

Plaintiff relies upon the affidavit of Dr. Scott A. Rodger - the physician who allegedly prescribed Redux to Plaintiff - to support her claim that the named sales

---

[39] Albertson at 1149-1150.

[40] Doc. 2 at p. 56.

representatives can be held liable for fraud based on the representations made to Plaintiff's physician.[41] In addition to the affidavit of Dr. Rodger, Plaintiff has also filed various records from Dr. Rodger's office, select pages from the 1998 edition of the Physicians' Desk Reference ("PDR"), and detailing notes logged by the defendant sales representatives in 1996 and 1997.[42]

In his affidavit, Dr. Rodger stated that "[d]uring the course of prescribing Redux, Wyeth drug salespeople told me to not worry about the bad press that Redux was getting and continued to encourage me to keep writing prescriptions [...] If I was aware of the dangers that Redux posed to the health of my patients as reflected in the 'black box'[43] warning contained in the 1998 PDR, I would never have prescribed Redux. The warnings contained in the black box warning were not communicated to me at the time of prescribing Redux to Ms. Sobkowski in 1996."[44]

Although, Dr. Rodder's affidavit fails to identify by name the "Wyeth salespeople," who allegedly made the representations, the Court will assume that

---

[41] Doc. 9, Plaintiff's Memorandum, Attached Exhibit.

[42] Id. Presumably, this is all the material that Plaintiff could possibly offer this Court in her effort to defeat Wyeth's claim of fraudulent joinder in this case. As Plaintiff herself stated in her Motion for Remand, "liability depositions relevant to this case have been taken long ago. Experts have been chosen by the lawyers on both sides and deposed multiple times. All that remains is to depose treating physicians and a few other fact witnesses." See Doc. 9 at p.5.

[43] According to Plaintiff, the FDA recommends pharmaceutical companies to provide a "black box" warning to emphasize the risks that might be associated with the use of a given drug. See Doc. 2 at ¶¶130-141. This black box warning appears near to the description of the drug in the PDR. Based on the materials offered by Plaintiff, the first PDR black box warning was published in 1998.

[44] Id.

the allegations in Dr. Rodger's affidavit refers to the sales representatives named in this case. However, even with this assumption, the facts alleged in Dr. Rodger's affidavit fail to support Plaintiff's claims against the sales representatives for fraud for several reasons.

First, nothing in Dr. Rodger's affidavit or the other information filed by Plaintiff suggests that the sales representatives had special knowledge about Redux, which they withheld from Dr. Rodger. Rather, Dr. Rodger avers that the sales representatives told him not to worry about the bad press, as one would expect of anyone who sells a product that has received less than favorable treatment from news media.

Second, Dr. Rodger does not affirmatively allege the month or even the year he was told by the sales representatives to disregard the "bad press." The omission in Dr. Rodger's affidavit of the dates and year in which the representations were made by sales representatives is notable in view of the fact that according to the "detailing statement," attached to Dr. Rodger's affidavit, the sales representatives actually visited with Dr. Rodger, *after* he had prescribed Redux to Plaintiff. These detailing statements evidence that the sales representatives' marketing interactions with Dr. Rodger - in which they told Dr. Rodger to ignore the "bad press" - first occurred on July 22, 1997, more than one year after Dr. Rodger prescribed Redux to Plaintiff.[45]

---

[45] The Amended Complaint reveals that Ms. Sobkowski was prescribed Redux on June 21,
(continued...)

Finally, the "black box" warnings, attached to Dr. Rodger's affidavit, are in the 1998 PDR, which was not in existence in 1996, the year Plaintiff ingested Redux for approximately a three-month period.

Wyeth, on the other hand, has provided the Court with the affidavits of all three sales representatives to support its position that Plaintiff has no possibility of stating a single cause of action against these non-diverse defendants.

In each of these affidavits, the sales representatives have sworn that: (1) they never sold Redux; (2) they never intentionally misrepresented the safety or efficacy of Redux to any physician; (3) Wyeth was their only source of knowledge and information with respect to Redux; (4) they have no specialized medical or pharmacological training with which they independently may have evaluated the safety and efficacy of Redux; and (5) Wyeth provided them with the FDA-approved package inserts and other information which were used by the sales representatives in the course of their employment with Wyeth.[46]

Accordingly, considering all of the evidence disclosed in the affidavits, it is evident that the sales representatives did not sell or distribute Redux to any physicians, including Dr. Rodger, and that any representations that were made by the sales representatives to Dr. Rodger were made *after* Dr. Rodger had prescribed Redux and *after* Plaintiff had stopped taking Redux. Therefore, the alleged

---

[45](...continued)
1996 and that she ingested Redux for about ninety (90) days. *See* Doc. 2 at ¶¶5-6.

[46] *See* Wyeth's Memorandum in Opposition to Plaintiff's Motion to Remand, Declarations of Potier, Richards, and Troy, Doc. 20, Exhibits 10, 11, and 12.



misrepresentations by the sales representatives to ignore the "bad press," even if considered to be sufficient to constitute a misrepresentation, cannot be actionable under a fraud theory in view of the fact that Plaintiff could not have relied on the misrepresentation through the information provided by the sales representatives to Plaintiff's physician, Dr. Rodger after the fact. The Court therefore concludes that even drawing all reasonable inferences in favor of the Plaintiff, there is no reasonable basis for predicting that Florida law might impose liability on the sales representatives for fraud.

**B. Negligence**

Similarly, there is no possibility that Plaintiff can prove a negligence claim against the sales representatives. Under the negligence count in her Amended Complaint, Plaintiff repeats the same allegations presented in the fraud count, but adds that the sales representatives owed a duty to Plaintiff "not to exaggerate the efficacy or minimize the risks of the drug they were promoting, distributing, and selling."[47] She also claims that the sales representative "knew or should have known the risks of PPH associated with Redux," and that they "misrepresented [...] the dangers of [...] Redux."[48]

---

[47] Complaint, Doc. 2 at ¶300.

[48] *Id.* at ¶¶301-302.

13

Relying upon *Boule v. American General Life and Accident Insurance*[49] and several Florida cases,[50] Plaintiff argues that the sales representatives may be liable under Florida law for their negligent acts even if those acts are committed in the scope of their employment. In *Bouie*, insurance sales agents who sold policies directly to the plaintiff were accused of committing fraud by failing to disclose racial disparities in premiums and benefits. The court held that if the sales agents "were aware of the disparity and intentionally did not disclose it, then [...] plaintiff is equally entitled to recover against the individual defendants as against the insurer."[51]

However, none of the cases cited by Plaintiff nor *Bouie* are instructive because each of these cases was grounded on the supposition that the defendants *knew or should have known* of the risks caused by their "sale" of a given product.

Here, in contrast, the affidavits supplied by both parties demonstrate that the sales representatives did not act in their individual capacities and had no special knowledge of any alleged risks that Redux presented. According to the affidavits of all three sales representatives, they promoted Redux based on information provided

---

[49] 199 F. Supp.2d 1259 (N.D. Fla. 2002).

[50] Plaintiff cites Greenberg v. Post, 19 So. 2d 714, 717 (1944)("It is well settled that an employee may be held personally liable at the suit of a third person for positive negligent acts committed by him even though his employer may likewise be liable for the servant's negligent conduct when exercised within the scope of the employment."); and White-Wilson Medical Center v. Dayta Consultants, Inc. 486 So. 2d 659, 661 (Fla. Dist. Ct. App. 1986)("Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment [...] This is so even if no argument is advanced that the corporate form should be disregarded.")

[51] *Id.* at 1263.

14

by Wyeth, and they did not have any independent knowledge of the danger which Redux allegedly presented at the time they promoted the drug to Dr. Rodger.

This evidence is uncontroverted. Indeed, Dr. Rodger's affidavit and the "detailing statement" attached thereto, actually *confirm* that the sales representatives did not have knowledge of any purported risks presented by Redux while they promoted the product. Without such knowledge and without any suggestion that the sales representatives acted in their individual capacities in promoting the drug, Plaintiff's negligence claim against them has no basis in fact.

In light of the foregoing, there is no possibility that Plaintiff could prove a claim in negligence against the sales representatives based on the facts involved in this case.

## C. Civil Conspiracy

Plaintiff also has no possibility under Florida law of proving a claim for civil conspiracy against the sales representatives. "A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."[52] Under Florida law, it is well settled that neither an agent nor an employee can conspire with his or her corporate principal or employer,[53] unless the

---

[52] Lipsig v. Ramlawi, 760 So. 2d 170, 180 -181 (Fla. Dist. Ct. App. 2000) *Citing* Raimi v. Furlong, 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App.) *rev. denied* 717 So. 2d 531 (Fla. 1998).

[53] *See* Richard Bertram, Inc. v. Sterling Bank & Trust, 820 So. 2d 963, 965 (Fla. Dist. Ct.
(continued...)

15

employee has a personal stake "that is separate and distinct from the corporation's interests."[54]

There are no allegations in the Amended Complaint nor averments in the affidavits filed by Plaintiff that even remotely suggest that the sales representatives had a personal stake in their promotion of Redux "separate and distinct" from the interests of Wyeth. Rather, all of the allegations following the conspiracy count in the Amended Complaint reveal that the sales representatives and Wyeth acted with one common goal in mind - to sell Redux.[55] Therefore, because the sales representatives were employees of Wyeth during the time that the alleged conspiracy took place, as a matter of law, they could not have conspired with Wyeth.

**D. Misrepresentation by Seller of Chattel**

Plaintiff alleges that she is entitled to relief for "Misrepresentation by Seller of Chattel, Restatement of Torts (Second) §402B or Restatement of Torts (Third): Product Liability §9."[56] Plaintiff cannot possibly prevail on either type of claim under Florida law for the following reasons.

---

[53](...continued)
App. 2002)("It is well settled that neither an agent nor an employee can conspire with his or her corporate principal or employer.") *Accord* Leisure Founders, Inc. v. CUC International Inc., 833 F. Supp. 1562, 1574 (S.D. Fla. 1993)("It is axiomatic [...] that a corporation cannot conspire with its agents or employees.)

[54] Lipsig at 180-181.

[55] Doc. 2. at ¶¶273-285.

[56] *Id.* at p. 52.

First, no Florida court has ever adopted Restatement (Second) of Torts §402B.[57] Under the *Erie*[58] doctrine, a federal court sitting in diversity must apply the substantive law of the forum state. The Supreme Court has held that in a diversity case, a federal court is "not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the state in which the federal court in which the federal court sits."[59] Accordingly, the Court declines to allow Plaintiff to assert liability on a theory never before recognized under Florida law.

Second, even if Florida courts were to apply §402B, the rule applies only to sellers of chattel. Here, although Plaintiff alleges that the sales representatives sold Redux,[60] each of the representatives aver in their sworn declaration that they never sold Redux. These sworn allegations have not been controverted by Plaintiff. Moreover, Dr. Rodger's affidavit and the "detailing statement" attached thereto, reflect that the sales representatives merely encouraged Dr. Rodgers to write prescriptions of the drug.

Further, §402B only applies to sellers "who make public a misrepresentation of material fact." Under the rule, the misrepresentation is made public when the seller announces it to the public at large in order to induce purchase of the

---

[57] *See* Stevens v. Danek Medical, Inc., 1999 WL 33217282 (S.D. Fla. 1999).

[58] Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

[59] Day & Zimmerman, Inc. v. Challoner, 423 U.S. 3, 4 (1975).

[60] Doc. 2, Complaint at ¶¶286-292.

17

chattels.[61] Here, it is merely alleged that the misrepresentations by the sales representatives were made directly to Dr. Rodger, and not to the public.[62]

Finally, Plaintiff's purported claims under Restatement of Torts (Second) § 402B and Restatement of Torts (Third), Product Liability §9 fail because they sound in strict liability. Consistent with these provisions of the Restatement, Florida law applies strict liability only to manufacturers of products[63] rather than to promoters. Because it is undisputed that the sales representatives in this case were not in the business of manufacturing Redux, under Florida law, they cannot be held strictly liable for the harm that allegedly resulted from Plaintiff's ingestion of the drug.

**E. Breach of Warranty**

Lastly, Plaintiff also has no possibility of proving a claim for breach of implied or express warranty against the sales representatives. Under Florida law, each of these claims requires Plaintiff to demonstrate privity of contract between herself and the sales representatives.[64] Plaintiff does not allege that such privity exists[65] and there has been no evidence submitted by the parties which would suggest that

---

[61] Rest. 2d Torts §402B, comment h.

[62] Complaint, Doc. 2 at ¶¶286-292

[63] *See* West v. Caterpillar Tractor Company, Inc., 336 So. 2d 80, 87 (Fla. 1976).

[64] *See* Edgar v. Danek Med., Inc., 1999 WL 1054864 (M.D. Fla. 1999) *Citing* Kramer v. Piper Aircraft Corp., 520 So. 2d 37, 39 (Fla. 1988); T.W.M. v. American Med. Sys., Inc., 886 F. Supp 842, 844 (N.D. Fla. 1995)("A plaintiff who purchases a product, but does not buy it directly from the defendant, is not in privity with that defendant.") *See Also* Baker v. Danek Medical, 35 F. Supp. 2d 875, 878 ("Florida courts have required privity between the manufacturer and the consumer of the product in order for the consumer to assert an implied warranty claim.")

[65] Complaint, Doc. 2 ¶¶318-330.

privity exists between Plaintiff and the defendant sales representatives.

Accordingly, there is no possibility that Plaintiff could state a claim against the sales representatives under Florida law for breach of warranty.

In sum, because there is no reasonable basis in the record for predicting that Florida law might impose liability under any of the purported causes of action raised by Plaintiff against the sales representatives based on the facts involved in this case, the Court concludes that for purposes of diversity the sales representatives should be considered fraudulently joined and therefore may be ignored for purposes of establishing diversity of citizenship. Therefore, Wyeth's removal of this case was proper and Plaintiff's Motion to Remand (Doc. 9) is due to be DENIED.

## IV.  RECOMMENDATION

In view of the foregoing, it is respectfully RECOMMENDED that Plaintiff's Motion to Remand (Doc. 9) be DENIED.

IN CHAMBERS in Ocala, Florida, on this 17th day of May, 2004.

GARY R. JONES
United States Magistrate Judge

Copies to:
Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

F I L E    C O P Y

Date Printed: 05/18/2004

Notice sent to:

    ____    William E. Lawton, Esq.
               Dean, Ringers, Morgan and Lawton, P.A.
               201 E. Pine St., Suite 1200
               P.O. Box 2928
               Orlando, FL 32802-2928

               5:04-cv-00096    ail

    ____    Lamar Dwight Oxford, Esq.
               Dean, Ringers, Morgan and Lawton, P.A.
               201 E. Pine St., Suite 1200
               P.O. Box 2928
               Orlando, FL 32802-2928

               5:04-cv-00096    ail

    ____    Pierre Seacord, Esq.
               Ringer, Henry, Buckley & Seacord, P.A.
               14 E. Washington St., Suite 200
               P.O. Box 4922
               Orlando, FL 32802-4922

               5:04-cv-00096    ail

    ____    Geoffrey D. Ringer, Esq.
               Ringer, Henry, Buckley & Seacord, P.A.
               14 E. Washington St., Suite 200
               P.O. Box 4922
               Orlando, FL 32802-4922

               5:04-cv-00096    ail

    ____    Gregory J. Bubalo, Esq.
               Williams, Dailey, O'Leary,
               Craine & Love, P.C.
               1001 S.W. Fifth Ave., Suite 1900
               Portland, OR 97204

               5:04-cv-00096    ail

    ____    Kevin M. Adams, Esq.
               Williams, Dailey, O'Leary,
               Craine & Love, P.C.
               1001 S.W. Fifth Ave., Suite 1900
               Portland, OR 97204

               5:04-cv-00096    ail

    ____    Michael L. Williams, Esq.
               Williams, Dailey, O'Leary,

Craine & Love, P.C.
1001 S.W. Fifth Ave., Suite 1900
Portland, OR  97204

5:04-cv-00096    ail

___ Linda C. Love, Esq.
Williams, Dailey, O'Leary,
Craine & Love, P.C.
1001 S.W. Fifth Ave., Suite 1900
Portland, OR  97204

5:04-cv-00096    ail

___ R. Benjamine Reid, Esq.
Carlton Fields, P.A.
4000 Bank of America Tower
100 S.E. 2nd St.
P.O. Box 019101
Miami, FL  33131-9101

5:04-cv-00096    ail

# EXHIBIT 7(M)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

FILED

2003 DEC 23  PM 2: 59

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

KAREN MOFFETT,                        §
                                      §
        *Plaintiff*                   §
                                      §
v.                                    §        Cause No.
                                      §        DR-03-CV-069-OLG/DG
                                      §
WYETH, INC., WYETH                    §
PHARMACEUTICALS,, DON LECOCKE,        §
AND RICHARD E. MARTINEZ,              §
        *Defendants*                  §

UNITED STATES MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

Pending is Plaintiff, Karen Moffett's, motion to remand filed September 22, 2003,

pursuant to Title 28, United States Code, section 1447(c). After examining Plaintiff's motion and

the Defendants' subsequent response, the undersigned concludes that it should be **DENIED**.

Background and Procedural History

The record shows that a suit was filed in Texas state court in the 38th Judicial District in

Uvalde County, Texas on June 2, 2003. Defendant, Wyeth, filed a notice of removal to federal

court pursuant to Title 28, United States Code, sections 1441(b) on August 22, 2003. Plaintiff filed

a motion for remand on September 22, 2003. This case was referred to the undersigned in an

order entered August 22, 2003 by United States District Judge Orlando L. Garcia.

Discussion

This removal action arose out of products liability claims against, Wyeth, the

manufacturer of the weight-loss drugs fenfluramine and dexfenfluramine which, when combined,

1

are commonly known as fen-phen. Plaintiff has asserted that she suffered physical harm as a result of the use of these weight-loss drugs. Plaintiff filed suit not only against the drug manufacturer, but also against two "detail representatives" or pharmaceutical representatives who allegedly promoted the drugs to plaintiff's physician. Defendant, Wyeth, subsequently moved for removal to federal court.

The basis of removal was diversity of citizenship. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court. . . ." 28 U.S.C. § 1441(a). As long as the amount in controversy exceeds $75,000, federal courts have original jurisdiction over all civil actions between citizens of different states. 28 U.S.C. § 1332. Thus, Defendant must demonstrate that the parties were from different states. However, Defendants Don Lecocke and Richard E. Martinez ("the detail representatives") are citizens of Texas, and Plaintiff is a citizen of Texas. Therefore, at first glance it appears that there is not complete diversity, and removal would be inappropriate. Defendant, however, claimed fraudulent joinder. Defendant's argument is that there is no viable cause of action against the detail representatives and that they were only added to the suit in order to avoid federal jurisdiction.

"The burden of proving a fraudulent joinder is a heavy one." *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983). Defendant, in order to demonstrate that a party has been fraudulently joined must demonstrate either "outright fraud in the plaintiff's recitation of jurisdictional facts or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court." *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997)(citations and internal quotations omitted). In this instance, Defendant does not allege that Plaintiff engaged in an outright fraud, thus the second method of

2

demonstrating fraudulent joinder is Defendant's only avenue of relief.

In making a determination of whether or not Defendant has made a showing of fraudulent joinder, the Court "must determine whether there is arguably a reasonable basis for predicting that state law might impose liability." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462 (5th Cir. 2003). In order to avoid a finding of fraudulent joinder, the Court must find that there is a reasonable possibility of recovery and not simply a theoretical one. *Id.* Thus, the "no possibility" standard articulated in *Rodriguez* has been interpreted to mean no *reasonable* possibility. *Id.* Defendant, claims that there is no such reasonable possibility of recovery against the detail representatives. WYETH'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND at 3.

In determining if there is a reasonable possibility of recovery, the Court "must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). Additionally, the Court must "resolve any questions of material fact, and any ambiguity or uncertainty in the controlling state law in [Plaintiff's] favor." *Griggs v. State Farm Lloyds*, 181 F.3d 894, 901 (5th Cir 2003).

Applying these standards in the light most favorable to Plaintiff, the Court concludes that Plaintiff has engaged in fraudulent joinder and the matter should remain in federal court. Plaintiff, in her original complaint, pleaded causes of action of negligence, misrepresentation, and fraud. However, Plaintiff has been able to point to no breach of duty by the detail representatives. Plaintiff also has not pointed to any misrepresentations by the detail representatives as to the suitability of fen-phen as a diet drug. It is true that Texas does recognize the possibility of liability on the part of an agent in his individual capacity for damages caused by his actions. *Maintenance, Inc. v. ITT Hartford Group, Inc.*, 895 S.W.2d 816, 819 (Tex. App.

1995). However, in conducting an analysis of whether fraudulent joinder exists, the Court should look to the pleadings to determine if a valid cause of action has been stated, but may also engage in a more summary judgment-type analysis and "pierce the pleading to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 389 (5th Cir 2000)(quoting *LeJuene v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992). Thus, even though Texas recognizes a cause of action against an agent, the Court must still determine if the Plaintiff has properly developed such cause of action in order to avoid a claim of fraudulent joinder. In Plaintiff's case, she has fallen well short of her burden.

First, as for all of Plaintiff's causes of action, she has failed to demonstrate the proper connection between Plaintiff and the detail representatives. Under Texas law, Plaintiff's complaint "must at least provide sufficient factual information that the defendant is able to prepare a defense." *City of Alamo v. Casas*, 960 S.W.2d 240, 251-252 (Tex. App. 1997). How can the detail representatives prepare for a defense in this case without the name of Plaintiff's physician? Both detail representatives, in declarations attached to Defendant's notice of removal, stated that they "do not know if I visited plaintiff's prescribing physicians as alleged in the petition because {Plaintiff has not] identified them." DECLARATION OF DON LECOCKE at 3; DECLARATION OF RICHARD E. MARTINEZ at 3. Plaintiff has had ample time, over three months, to rectify this situation and has failed to do so. Because Plaintiff has failed to give sufficient factual information so that Defendant can prepare for a defense, a finding of fraudulent joinder is warranted.

Second, Plaintiff has provided no adequate evidence in order to develop fraud or misrepresentation on the part of the detail representatives. Piercing the pleadings, the Court is

4

presented with mere accusations of misrepresentation, with nothing of substance to back these

accusations up. Detail representatives made numerous visits to doctors throughout Texas.

Plaintiff, in her motion to remand, states that "notes of these 2,486 visits create fact issues

regarding the Detail Representative Defendants' involvement in the promotion and distribution

of Diet Drugs and what they represented to doctors including the doctor involved in this suit."

MOTION FOR REMAND at 13. However, the only visits of any consequence whatsoever to this suit

were visits made to Plaintiff's doctor which could have led to actions by the detail

representatives injuring the Plaintiff.[1] Additionally, Plaintiff went on to claim that other

representatives could have made misrepresentations to other doctors. Plaintiff suggests that,

because other representatives could have made other misrepresentations, the detail

representatives in this case could have made similar misrepresentations. MOTION FOR REMAND at

14. Again, Plaintiff fails to understand that its burden is to draw a connection between *this*

*plaintiff* and *these defendants*. The Plaintiff has simply failed to demonstrate such a connection.

Thus, there is no reasonable possibility of recovery against the detail representatives, and a

finding of fraudulent joinder is warranted. *Ross*, 344 F3d. at 462.

In piercing the pleadings, the Court concludes that the detail representatives were added

in an attempt to avoid federal jurisdiction. Thus, Plaintiff's motion to remand should be denied.

It is further recommended that Defendant's Motion to Stay all Proceedings Pending Transfer to

MDL-1203 should also be granted.

---

[1]Plaintiff does point to seven visits by the detail representatives that were allegedly made to
Plaintiff's doctor. However, the Court is aware of no evidence that suggests that, based on these seven
visits, the detail representatives made misrepresentations or that those misrepresentations were actually
relied upon by Plaintiff.

## Recommendation

(1)     Plaintiff's motion to remand should be **DENIED**.

(2)     Defendant's motion to stay all proceedings pending transfer to MDL-1203 should be

**GRANTED**.

(3)     The parties may wish to file objections to the above recommendations. Failure to

file written objections to the findings and recommendations contained in this report within ten (10)

days from the date of its receipt shall bar an aggrieved party from receiving a *de novo* review by the

District Court of the findings and recommendations contained herein, *see* 28 U.S.C. § 636(b)(1)(C),

and shall bar an aggrieved party "except upon grounds of plain error from attacking on appeal the

unobjected-to proposed factual findings and legal conclusions accepted by the District Court." *See*

*Douglas v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The Clerk of the

Court shall promptly mail copies of this report to the parties, return receipt requested.

Signed on this ___17th___ day of December, 2003.

DENNIS G. GREEN
UNITED STATES MAGISTRATE JUDGE

6